**L. C. MARTIN, Appellant,**

v.

**FIRST STATE BANK, MEMPHIS, Texas,**
**Appellee.**

No. 8307.

Court of Civil Appeals of Texas,
Amarillo.

Jan. 22, 1973.

Richard D. Bird, Childress, for appellant.

T. D. Smith, Houston, for appellee.

ELLIS, Chief Justice.

This is an appeal from a judgment granting a summary judgment in favor of a bank, defendant-appellee herein, in an action brought by a plaintiff seeking recovery of sums allegedly due upon Certificates of Deposit purchased by him and deposited with the bank. The defendant's motion for summary judgment sustained by the court was based upon the bank's asserted right to offset the entire amount of such Certificates of Deposit against outstanding loans owing by third parties to the bank which the plaintiff had become obligated to pay. The plaintiff challenged the court's action in granting the summary judgment, asserting that special agreements as to the application of the Certificates of Deposit precluded the allowance of the bank's claimed offsets, and that the bank had failed to establish that no genuine issues of material fact had been raised regarding the bank's asserted right of offset. Reversed and remanded.

According to the pleadings and summary judgment proof, this litigation arose out of transactions involving the provisions of a written agreement dated February 27, 1969, whereunder L. C. Martin, plaintiff-appellant herein, agreed to sell Vincent D. Kickerillo 5,100 shares of voting stock in the First State Bank of Memphis, Texas. Among other obligations undertaken by Martin under the original agreement are the following:

\* \* \* \* \* \*

"2. I [Martin] agree to purchase approximately Fifty Thousand ($50,000.00) Dollars of loans from the First State Bank of Memphis for Ten ($10.00) Dollars, such loans to be excrowed (sic) with the First State Bank of Memphis and when and if collected, the proceeds of such collections will be distributed as follows:

a. $0.60 (60%) of each dollar collected will be distributed to L. C. Martin, and

b. $0.40 (40%) of each dollar collected will be distributed to the First State Bank of Memphis.

"3. I agree to place a Certificate of Deposit in the amount of One Hundred Thousand ($100,000.00) Dollars bearing interest at the rate of six and one-quarter (6¼) per cent per annum with the First State Bank of Memphis, endorsing and pledging same to secure all loans classified by banking examiners as of today as (a) 60 days and over (a list of which are attached), and (b) doubtful (a list of which are attached), said Certificate of Deposit and guarantee to be for a period of two (2) years from date.

"4. I further agree to guarantee by endorsement personally, the following lines of credit:

a. Lyles Construction Company and/or Euman Lyles

b. J. D. Evans

c. Alex Saied and Gibson Products Company, Inc. and Saied's Inc.—up to a total of $34,000.00 to be applied to any of the aforementioned lines

d. Jack Kinard."

\* \* \* \* \* \*

The original agreement between Martin and Kickerillo was amended by a letter agreement dated March 3, 1969, which eliminated paragraph 3 thereof (above quoted) and substituted therefor the following:

" 'Paragraph 3—I agree to purchase the collateral on the attached listed loans (Exhibit A), (said Exhibit A is herewith incorporated by reference) upon request

by the President of the First State Bank of Memphis.' "

On the same date, March 3, 1969, Martin wrote a letter to John Deaver and Henry C. King, Jr., named as payees and trustees in the Certificates of Deposit in question, stating:

"I am today placing a certificate of Deposit in the amount of $54,476.52 with the First State Bank of Memphis, Memphis, Texas, said funds to be used upon request of the President of the First State Bank of Memphis, Memphis, Texas, to purchase the collateral of any loans in default listed in *Exhibit A* that is attached herewith and incorporated by reference.

"These funds to purchase collateral above mentioned are to be used until exhausted, in which case additional funds will be contributed until all collateral on any bad loans listed above have been purchased or at the end of two years from date hereof, any proceeds remaining are to be returned to me."

\*   \*   \*   \*   \*   \*

The Exhibit "A" above mentioned consisted of three (3) lists designated as follows: "PAST DUE INSTALLMENT NOTES (60 days or over) 2–27–69 Indirect Paper" in the total sum of $6,176.26; "COMMERCIAL PAST DUE FEB. 27, 1969 SECURED," in the total sum of $159,262.72; and "PAST DUE INSTALLMENT NOTES (60 Days or over) 2–27–69 Direct Paper," in the total sum of $56,602.52. Each list contains separate columns showing each separate loan, balances and collateral securing the same.

Eleven (11) Certificates of Deposit, ten (10) of which were in the sum of $5,000 each, and one (1) in the sum of $4,476.52, in the total amount of $54,476.52, payable to order of Henry C. King, Jr., Trustee, and John Deaver, Trustee, bearing interest at the rate of 5 per cent per annum, maturing on March 4, 1971, were purchased by L. C. Martin and deposited with the bank. In response to interrogatories, the bank furnished copies of the eleven (11) Certificates of Deposit together with a copy of the letter addressed to the above named trustees, indicating that the bank was advised of the conditions with respect to the particular purpose and use of the Certificates of Deposit so deposited with it.

On March 2, 1971, Kickerillo assigned to the bank all of his right, title and interest in and to the agreements pertaining to the purchase of the stock from Martin.

On March 17, 1971, L. C. Martin instituted suit against the First State Bank of Memphis, Texas, seeking recovery upon the Certificates of Deposit in the total sum of $54,476.52, plus accrued interest and attorney's fees. The bank answered by general denial and pleaded defensively that Martin was obligated to it in excess of the amount of the Certificates of Deposit and that any sum due and owing to Martin had been offset against outstanding loans of third parties which he was obligated to pay to the bank. The bank further alleged that it had the right of offset on the grounds that the indebtedness for which Martin had become obligated was matured and unpaid and that it believes Martin to be insolvent and incapable of paying such obligations.

On April 20, 1972, the trial court sustained the bank's motion for summary judgment and decreed that Martin recover nothing in his suit against the bank. From this judgment Martin has brought his appeal predicated upon three assignments of error by which he contends that the trial court erred in sustaining appellee's motion for summary judgment because (1) the pleadings, interrogatories and admissions show that appellant had a cause of action against the appellee; (2) there was a genuine fact issue as to the amount of offset, if any, to which appellee was entitled; and (3) pursuant to the terms and conditions of the trust agreement, the appellant was entitled to receive the proceeds of the Certificates of Deposit upon their maturity.

■ The primary question for our consideration in disposing of this appeal is whether or not the deposit of the certificates is to be regarded as a general or a special deposit with the bank. When money or its equivalent is deposited in a bank without any special agreement, the law implies that it is to be mingled with the other funds of the bank, the relation of debtor and creditor is created between the bank and the depositor, and the deposit is recognized as a *general* deposit. McBride v. American Ry. & Lighting Co., 60 Tex.Civ. App. 226, 127 S.W. 229 (1910, no writ); First National Bank of Ranger v. Price, 262 S.W. 797 (Tex.Civ.App.—El Paso 1924, no writ). It is recognized that it is permissible for a bank to set off in equity a debt owed to it by a depositor against a *general* deposit. Goldstein v. Union National Bank, 109 Tex. 555, 213 S.W. 584 (1919). On the other hand a deposit made for some special application or disposition is a *special* deposit and when a bank knowingly accepts a deposit for a specific purpose, it cannot thereafter divert it for its own benefit or otherwise act to defeat the purpose for which the deposit was made. City State Bank in Wellington v. National Bank of Commerce of Altus, Okl., 261 S. W.2d 749 (Tex.Civ.App.—Fort Worth 1953, writ ref'd n.r.e.). A special deposit, or one made for a specific purpose, differs from a general deposit in that title to the special deposit does not pass to the bank. Hays v. Shaw, 69 S.W.2d 807 (Tex.Civ. App.—Eastland 1934, no writ), and the relationship created by the deposit is that of bailor and bailee, rather than that of creditor and debtor. Harper v. Merchants & Planters National Bank of Mt. Vernon, 68 S.W.2d 351 (Tex.Civ.App.—Texarkana 1934, writ dism'd); Tyler County State Bank v. Rhodes, 256 S.W. 947 (Tex.Civ. App.—Beaumont 1923, no writ).

■ It is generally recognized that whether a deposit in bank is a special or general one is dependent upon the mutual intentions and understandings of the parties, as revealed by their agreements and all of the circumstances of the case involved. Shaw v. Davidson, 19 S.W.2d 789 (Tex.Civ.App.—Texarkana 1929, no writ). A certificate of deposit issued by a bank may evidence a deposit of either a general or special character in accordance with the particular facts involved. 9 C.J.S. Banks and Banking § 315, at 641.

A review of the significant contractual provisions in the instant case (paragraph 3, as amended, of the Martin-Kickerillo agreement), discloses that Martin had agreed to "purchase the collateral" on the listed *loans set out in Exhibit A "upon request by the President of the First State Bank of Memphis."* The directive to the trustees, a copy of which was provided by the bank in response to interrogatories, set out that Martin had deposited the Certificates of Deposit in the amount of $54,476.52 with the bank, such funds to be used upon request of the President of the bank *"to purchase the collateral of any loans in default listed in Exhibit A that is attached herewith. . . ."* (emphasis added). The directive further states that these funds are to be used to purchase collateral above mentioned and outlines the procedures to be followed in the event the deposited funds are exhausted or any proceeds thereof remain at the end of the two year period. All of these provisions relate to the limitations prescribed as to the purpose and use of the Certificates of Deposit.

It is uncontroverted that the Certificates of Deposit were purchased by Martin, placed in the name of Henry C. King, Jr., Trustee, and John Deaver, Trustee, and that no request was ever made by the President of the bank of the trustees to purchase collateral on any loans in default and that the appellee was aware that both of the named trustees had resigned as such. It is likewise uncontroverted that no request was ever made of L. C. Martin by the President of the bank for the purchase of collateral.

The appellee takes the position that the bank had the right to appropriate the pro-

ceeds from the Certificates of Deposit toward the liquidation of items of indebtedness without limiting its offsets to the purposes and uses mentioned in paragraph 3. Thus, it appears that the bank regarded the Certificates of Deposit as a general deposit available for offsetting any indebtedness which the appellant had become obligated to pay. It is significant that such a construction of the agreement would have been more nearly appropriate regarding the application of the Certificates of Deposit described in the original paragraph 3 (prior to its elimination) against the various items of indebtedness which the appellant had obligated himself to pay. The limitation upon the use of the Certificates of Deposit, referable to the amended paragraph 3 and the directive to the trustees, was specifically for the purchase of collateral upon the request of the bank president.

According to appellee's Admissions submitted concerning the manner of offsetting the Certificates of Deposit issued in behalf of L. C. Martin, out of the total sum of $59,924.18 credited to eight loan accounts, only the sum of $2,088.20, representing the total amount owed on four particular loans, was purported to have been offset against "collaterals and loans purchased." The remaining four loans credited by the respective offsets against the Certificates of Deposit did not purport to relate to collaterals purchased, and in no instance was there any request made by the bank president to the trustees or Martin concerning the purchase of "collaterals and loans."

▆▆ It is well established that a defendant moving for summary judgment assumes the negative burden of showing as a matter of law that the plaintiff had no cause of action against him. Gaddis v. Smith, 417 S.W.2d 577 (Tex.Sup.1967); Neigut v. McFadden, 257 S.W.2d 864, 868 (Tex.Civ.App.—El Paso 1953, writ ref'd n.r.e.). It is also well settled that when a summary judgment has been granted, it

should be affirmed only if the summary judgment record established a right thereto as a matter of law. Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex. Sup.1970); Prestegord v. Glenn, 441 S.W. 2d 185 (Tex.Sup.1969). In this case, the defendant bank had, in effect, assumed the negative burden of showing as a matter of law that the Certificates of Deposit against which it asserted the right of offset was a general one—not a special deposit for a special purpose. Under the present state of the record, it is our opinion that the movant has not clearly established its entitlement to the offsets claimed in view of the agreements as to the limited purposes and conditions under which the Certificates of Deposit were to be used. Also, in viewing the entire agreement and all of the circumstances, there appears to be some uncertainties as to the true meaning of the instrument and the intentions and understandings of the parties with respect to their rights thereunder. This is demonstrated by the lack of clarity as to the true meaning of the term "purchase of collateral" within the contemplation of the parties. It is not clear whether the term involved the mere purchase of the items listed as collateral securing a particular loan without directions as to the manner of crediting the proceeds, if any, derived from the purchase or sale thereof, or whether it involved the purchase of the particular loan for the amount due thereon with the purchaser receiving therefor the note or other evidence of the indebtedness with the collateral securing the same and any proceeds he may derive therefrom. Further, we note the absence of specification of procedure for effecting the purposes and uses of the deposit in the event of resignation of the trustees or whether such resignation would affect the character of the deposit as being general or special, thereby determining whether it was subject to the right of offset by the bank against the indebtedness owed by the depositor. Also, there are instances in which it is not clear

whether the credits are being applied in accordance with portions of the agreement other than paragraph 3, and loan accounts and credits which cannot be clearly reconciled from the records shown in the summary judgment proof, which we do not deem necessary to detail here.

In the event of ambiguity in an instrument which can be resolved only by reference to inconclusive extrinsic evidence, or if there is doubt as to the true meaning of an instrument, if ambiguous, the granting of a summary judgment is improper. Robert v. E. C. Milstead Ranching, Inc., 469 S.W.2d 429 (Tex.Civ.App.—Beaumont 1971, writ ref'd n.r.e.); Chapa v. Benavides Mill & Gin Co., 420 S.W.2d 464 (Tex.Civ.App.—San Antonio 1967, writ ref'd n.r.e.). The burden of establishing the absence of any genuine issue of material fact is upon the movant. Brooks v. Hale, 457 S.W.2d 159 (Tex.Civ.App.—Tyler 1970, writ ref'd n.r.e.), and where there is reasonable indication that a material fact is in dispute, the case should not be disposed of by summary judgment. Ridenour v. Wilkes, 283 S.W.2d 401 (Tex. Civ.App.—Dallas 1955, no writ), and cases cited therein.

From a review of the summary judgment proof, we do not believe that the moving party has conclusively negatived the existence of a genuine fact issue in regard to the controlling matter as to whether the deposit was general or special upon which depends the appellee's asserted right of offset. Since we have held that it has not been conclusively established by the summary judgment proof that as a matter of law the plaintiff has no cause of action or that there are no fact issues to be determined, the granting of the summary judgment cannot be sustained. This holding pretermits further discussion of the specific points of error submitted. Accordingly, the judgment is reversed and the cause is remanded to the trial court.