FIRST NATIONAL BANK IN GRAND PRAIRIE, Appellant,

v.

LONE STAR LIFE INSURANCE COMPANY, Appellee.

No. 18487.

Court of Civil Appeals of Texas, Dallas.

Feb. 27, 1975.

Rehearing Denied May 15, 1975.

Don C. Templin, Haynes & Boone, Dallas, for appellant.

William D. Sims, Jr., Jenkens & Gilchrist, Dallas, for appellee.

AKIN, Justice.

Lone Star Life Insurance Company sued the First National Bank in Grand Prairie to recover $30,000 plus interest which the bank refused to pay on a non-negotiable certificate of deposit payable to T. H. Hamilton. Lone Star alleged that it owns the certificate of deposit by virtue of foreclosure under a security agreement between Lone Star and Hamilton. The certificate of deposit was purchased by Hamilton with funds from Lone Star simultaneously with the closing of a real estate loan transaction between Hamilton and Lone Star, and pledge of the certificate of deposit was one of the conditions of the loan. Hamilton signed a security agreement covering the certificate of deposit and delivered the security agreement and certificate of deposit to Lone Star.

An officer of the bank was present throughout the transaction, and, as the trial court found on sufficient evidence, he had actual knowledge that the certificate of deposit was pledged to Lone Star. Hamilton defaulted and Lone Star foreclosed on all security, including the certificate of deposit, and notified the bank. The bank then claimed an equitable right to offset Hamilton's previous indebtedness to the bank against the certificate of deposit and attempted to do so.

Lone Star contends that the bank could not offset its claims against the certificate of deposit because the bank had notice of Lone Star's interest in the funds, under such decisions as National Indemnity Co. v. Spring Branch State Bank, 162 Tex. 521, 348 S.W.2d 528 (1961), which hold that where a bank has knowledge that a depositor's funds are trust funds, the bank may not seize and detain such funds to offset a debt of the depositor to the bank. The bank contends that these decisions are not controlling in this case because the Uniform Commercial Code, which was adopted in 1967, requires the filing of a financing statement for perfection of a security interest in such a deposit. We agree with the bank that the Code[1] applies here, but we also agree with Lone Star's alternative con-

1. All references to the Code are to the Tex.Bus. & Comm.Code Ann. (Tex. UCC 1968).

tention that the certificate of deposit, as distinguished from an ordinary deposit account, is an "instrument," with respect to which a security interest *can be perfected only* by transfer of possession, without the filing of a financing statement, under Tex. Bus. & Comm.Code Ann. § 9.304 (Tex. UCC 1968). [Emphasis added.]

We conclude that the *National Indemnity* rule does not apply here because that opinion, which was written before adoption of the Code, treats the certificate of deposit like any deposit account. The Code, however, makes a sharp distinction between the two. Article 9.105(a)(5) of the Code in its definition of "deposit account" specifically *excludes* an account evidenced by a "certificate of deposit." Furthermore, § 9.104(12) provides that article 9 does not apply to the transfer of an interest in any "deposit account" (except as provided with respect to proceeds and priorities in proceeds). Therefore, a certificate of deposit, regardless of negotiability, falls within the ambit of article 9 of the Code.

The situation here is not affected by § 9.104(9), which excludes "any right of set-off" from the requirements of article 9. In the context of this provision, it means that the claimant of a right of setoff is not required to comply with the Code. It does not mean that a setoff can be successfully asserted against a party who has perfected a security interest in the manner prescribed by article 9.

The bank asserts that this alleged pledge of the certificate of deposit is governed by § 9.102(b), which states that article 9 of the Code "applies to security interests created by contract including *pledge, assignment*," *and* that the certificate of deposit is *not* a "deposit account" as defined under Tex. Bus. & Comm.Code Ann. § 9.105(a)(5) (Tex. UCC Supp.1974), which provides: "[A] demand, time, savings, passbook or like account maintained with a bank, savings and loan association, credit union or like organization, *other than an account evi-*denced by a certificate of deposit." The bank's conclusion is that since the certificate of deposit is not excluded under § 9.104, which enumerates transactions excluded from article 9, and since a certificate of deposit is *not* a deposit account under § 9.105(a)(5), then this entire transaction is governed solely by the Code.

We *agree* with this contention. We interpret the Code provisions concerning security interests as exclusive with respect to perfection of a security interest in such a certificate. This interpretation is in accordance with the policy of the Code to provide certainty and uniformity in the rules governing transactions within its scope. Tex. Bus. & Comm.Code Ann. § 1.102 (Tex. UCC 1968).

The bank cites the recent Supreme Court cases of Hudnall v. Tyler Bank and Trust Co., 458 S.W.2d 183, 186 (Tex.1970) and Citizens National Bank of Dallas v. Hill, 505 S.W.2d 246, 248 (Tex.1974), which arose after adoption of the Code, for the proposition that one who seeks to impress a trust upon such funds or to show that the deposit was restricted in some manner (as a "special deposit") must show that the bank agreed to such a restriction of the deposit or agreed to act as trustee.

We do not reach this point because we hold, for reasons to be discussed later, that Lone Star perfected a security interest by taking possession of the certificate under its security agreement. We do not consider these cases as holding that the *National Indemnity* rule still applies to certificates of deposit as here, under the Code, because no certificates of deposit were involved. The deposits involved in each were "deposit accounts" under the definition in § 9.104 and, therefore, excluded from coverage by article 9. Consequently, the Supreme Court had no occasion to consider the application of the Code to a "certificate of deposit." We also note that Martin v. First State Bank, 490 S.W.2d 208, 211 (Tex.Civ.App.— Amarillo 1973, no writ), apparently follows

the *National Indemnity* rule. However, no question under the Code was presented, and *Martin* is distinguishable on its facts. The decision turned on the construction of a contract between Martin and a third party which had been assigned to the bank. Since the bank had possession of the certificates of deposit under a pledge agreement with Martin, no question under the Code was raised. The case was simply one of interpretation of an ambiguous written contract between Martin and the bank with reference to the application of the proceeds of the certificates of deposit.

■ We conclude that the rule in *National Indemnity* is still the law in Texas except for cases like the present, in which it has been displaced by the Code. Tex.Bus. & Comm.Code Ann. § 1.103 (Tex. UCC 1968).

■ Although we agree with the bank that the Code applies to the perfection of a security interest in a certificate of deposit, we cannot agree that the Code requires filing of a financing statement with the Secretary of State in a case like the present. Here it is undisputed that Lone Star did not file a financing statement. Therefore, the question is: Did Lone Star perfect a security interest in the certificate of deposit in question by taking possession pursuant to a security agreement?

Section 3.104(c) of the Code provides: "As used in other chapters of this title, and as the context may require, the terms 'draft', 'check', *'certificate of deposit'* and 'note' may refer to instruments which are not negotiable within this chapter as well as to instruments which are so negotiable." [Emphasis added.]

Section 9.304(a) provides: "A security interest in instruments (other than instru-

ments which constitute part of chattel paper) can be perfected *only* by the secured party's taking possession . . . ." [Emphasis added.]

The question then turns upon whether or not the certificate of deposit is an "instrument" under Tex.Bus. & Comm.Code Ann. § 9.105(a)(9) (Tex. UCC Supp.1974) of the Code, thereby bringing it within the ambit of § 9.304(a).

■ The bank asserts that a certificate of deposit cannot be an "instrument" under § 9.105(a)(9) of the Code because the restrictive legend "Non-Negotiable" would prevent the certificate of deposit from being transferred *in the ordinary course of business* by delivery and assignment. We agree that the instrument is non-negotiable.[2] Nevertheless, we hold that it is an "instrument" within § 9.105(a)(9). This section is not limited to negotiable instruments. It provides:

'Instrument' means a negotiable instrument (defined in Section 3.104), or a security (defined in Section 8.102) *or any other writing* which evidences a right to the payment of money and is not itself a security agreement or lease *and* is of a type which is in *ordinary course of business transferred by delivery* with any necessary indorsement or *assignment.* [Emphasis added.]

A certificate of deposit is a writing which evidences a right to the payment of money. The question is whether or not it may be transferred in the ordinary course of business by delivery with any *necessary* endorsement *or assignment.* "Instrument" in § 9.105(a)(9) covers non-negotiable documents because of the language "in ordinary course of business transferred by delivery

---

2. Whether a certificate of deposit is negotiable or non-negotiable is not determined by labeling the writing "non-negotiable" but by its terms. To be negotiable it must be payable to "order" or "bearer;" otherwise, it is non-negotiable. § 3.104(a).

The certificate of deposit in question is non-negotiable. It states:

This certifies that T. H. Hamilton has deposited in this bank payable to depositor in current funds the sum of Thirty Thousand and No/100 Dollars which amount the bank agrees to pay to depositor upon presentation of this certificate.

with any necessary . . . assignment." There would be no reason for the insertion of the aforesaid language if we construed the term "instrument" only to mean a negotiable instrument, as the bank would have us do in this case. The concept and intention of article 9 of the Code is to provide a method whereby all security interests in personal property and fixtures can be perfected. In some instances, filing is required, and, in others possession of the collateral is all that is necessary. *In re* Atlanta Times, Inc., 259 F.Supp. 820 (N.D.Ga. 1966), *affirmed,* Sanders v. National Acceptance Co. of America, 383 F.2d 606 (5th Cir. 1967); Levine v. Pascal, 94 Ill.App.2d 43, 236 N.E.2d 425, 431 (1968); *see also* Coogan, Kripke & Weiss, *The Outer Fringes of Article 9,* 79 Harv.L.Rev. 229, 261 (1965); Farnum v. C. J. Merrill, Inc., 264 A.2d 150, 154 (Me.1970); Coogan, *The New UCC Article 9,* 86 Harv.L.Rev. 477, 511, 559 (1973).

■ The language of the certificate in question indicates recognition by the bank that it is transferable by delivery and assignment in the ordinary course of business. It specifies an amount which the bank "agrees to pay to depositor *upon presentation of this certificate.*" [Emphasis added.] "Presentation" necessarily implies possession. Such presentation is necessary for the bank's protection because lack of possession would indicate that the named owner of the certificate of deposit may have transferred it to a third party. No such protection would be necessary if the certificate were not so transferable. Consequently, we hold that a certificate of deposit, whether negotiable or non-negotiable, is transferable by delivery of possession in the ordinary course of business as that term is used in defining "instruments" in § 9.105(a)(9). P. Coogan, W. Hogan & D. Vagts, Secured Transactions Under the Uniform Commercial Code, § 6.02[1], at 466 (1 Bender's Uniform Commercial Code Service 1974); *Id.* at 468 n. 8; *Id.* at 472; *Id.* § 6.02[2], at 525. In Southview Corp. v. Kleberg First National Bank,

512 S.W.2d 817 (Tex.Civ.App.—Corpus Christi 1974, no writ) similar certificates of deposit were held to be "instruments" within § 9.105(a)(9). We have reviewed the record in *Southview* and find that both certificates of deposit there were non-negotiable, as in this case.

■ Nothing in the certificate of deposit in question prohibits its assignability or transferability. The fact that it is non-negotiable simply means the third party cannot be a holder in due course and does not deny the certificate of deposit the status of an "instrument." Tex.Bus. & Comm.Code Ann. § 3.805 (Tex. UCC 1968).

We, therefore, conclude that, since the non-negotiable certificate of deposit is an "instrument" under § 9.105(a)(9) of the Code, the *only* way a security interest can be perfected here is by possession under the specific provisions of § 9.304(a). [Emphasis added.]

■ The bank also contends that even if the certificate of deposit is an "instrument," and if Lone Star had perfected its security interest in the certificate of deposit, Hamilton, as owner of the certificate of deposit could only convey to Lone Star Hamilton's contractual rights, which were subject to the bank's right of setoff against Hamilton. We cannot agree with this contention. Since we hold the certificate was an "instrument" within the Code, Lone Star perfected a security interest by taking possession, and no subsequent claim by the bank could impair that security interest. Commercial Discount Corp. v. Milwaukee Western Bank, 61 Wis.2d 671, 214 N.W.2d 33 (1974).

■ Our holding that the non-negotiable certificate of deposit is an "instrument" under article 9 of the Code makes it unnecessary to discuss bank's other points of error, except those pertaining to interest on the certificate of deposit. During closing of the loan transaction on March 16, 1972, between Hamilton and Lone Star (in which

issuance and pledge of the certificates of deposit was a requirement), a discussion took place between bank's vice president, Lone Star's vice president, and Hamilton as to whether Lone Star or Hamilton would receive the interest on the certificate of deposit. It was finally agreed among the parties that the interest on the certificate of deposit would be paid to Hamilton, and the bank's vice president initialled the certificate of deposit accordingly. Since Lone Star in oral argument has conceded any rights to the interest that accrued on the certificate of deposit prior to foreclosure thereon on May 16, 1972, we modify the judgment by the bank's right of setoff to the extent of $275, representing interest accruing to Hamilton prior to foreclosure by Lone Star. However, after foreclosure Lone Star owned the certificate of deposit and, therefore, is entitled to any interest accruing thereafter. Southwestern Bell Tel. Co. v. Crown Ins. Co., 416 S.W.2d 705 (Kansas City Mo.Ct.App.1967).

Although the trial court rested its judgment on a different ground, its judgment must be sustained if it is correct on any theory of law applicable to the record. Austin Paving Co. v. Cimarron Construction, Inc., 511 S.W.2d 417 (Tex.Civ.App.—Austin 1974, no writ); Trinity River Authority v. Texas Water Rights Commission, 481 S.W.2d 192 (Tex.Civ.App.—Austin 1972, writ ref'd n. r. e.); Searle-Taylor Machinery Co. v. Executive Car Leasing Co., 477 S.W.2d 696 (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ).

The judgment of the trial court, as modified herein, by credit of $275, is accordingly, affirmed.

CLAUDE WILLIAMS, Chief Justice (concurring).

While I am in agreement with, and concur in, the result reached by the majority that the judgment of the trial court should be affirmed, I express my disagreement with the theory that the resolution of the questions presented by this appeal is controlled by the Tex.Bus. & Comm.Code Ann. (Tex. UCC 1968).[1] I would simply base the affirmance of the trial court's judgment upon the established law of this state as announced by the Supreme Court in National Indemnity Co. v. Spring Branch State Bank, 162 Tex. 521, 348 S.W.2d 528 (1961).

The facts of this case are relatively simple. Upon being sued by Lone Star to recover upon the certificate of deposit, the bank denied any liability because such certificate of deposit was non-negotiable and also that the bank was entitled to setoff against the certificate of deposit for obligations of Hamilton to the bank, which were in default. Therefore, the primary question presented by this case is whether or not the bank was entitled to a setoff against a certificate of deposit. I consider Tex.Bus. & Comm.Code Ann. § 9.104(9) (Tex. UCC Supp.1974), as demonstrating that no provision of the Uniform Commercial Code is applicable to the resolution of this question.

The majority opinion urges that article 9 of the Texas Business and Commerce Code Annotated (Tex. UCC 1968) is applicable and therefore states:

The bank's conclusion is that since the certificate of deposit is not excluded under § 9.104, which enumerates transactions excluded from article 9, and since a certificate of deposit is *not* a deposit account under § 9.105(a)(5), then this entire transaction is governed solely by the Code. We *agree* with this contention.

I cannot agree with this statement since I do not think that it is supported in law.

First, the fact that a certificate of deposit does *not* fall within the Uniform Commercial Code definition of "deposit account" in Tex.Bus. & Comm.Code Ann. § 9.105(a)(5) (Tex. UCC Supp.1974) is no reason to hold

---

1. Any reference herein to the Code refers to the Texas Business and Commerce Code Annotated (Tex. UCC 1968).

that the Uniform Commercial Code is completely controlling in this case.[2]

Second, the fact that a certificate of deposit is *not* enumerated in Tex.Bus. & Comm.Code Ann. § 9.104 (Tex. UCC Supp. 1974), as being excluded from the coverage of article 9 is no justification to hold that the Uniform Commercial Code is controlling. The idea that something not excluded from coverage of the Uniform Commercial Code is included in it, is expressly rejected by Tex.Bus. & Comm.Code Ann. § 1.103 (Tex. UCC 1968), which provides that: "Unless *displaced* by the particular provisions of this title," the principles of Texas law supplement the Code's provisions. [Emphasis added.]

Third, the statement "this entire transaction is governed solely by the Code," is refuted by Tex.Bus. & Comm.Code Ann. § 9.104 (Tex. UCC Supp.1974), which is entitled: "Transactions Excluded from Chapter" and says in part: "This chapter does not apply . . . (9) to any right of set-off." This statement clearly excludes the idea that the Code is the controlling law concerning the right of the bank in this case to assert a setoff against the certificate of deposit.

By way of analogy, Tex.Bus. & Comm.Code Ann. § 9.104(7) (Tex. UCC Supp.1974) provides that a transfer of an interest or claim in or under any policy of insurance is excluded from coverage of article 9. The comment to subsection (7) states:

> 7. Rights under life insurance in other policies, and deposit accounts, are often put up as collateral. Such transactions are often quite special, do not fit easily under a general commercial statute and are adequately covered by existing law.

Such policy is clearly applicable in this situation. We do not have two parties, each with some variety of a security interest in the certificate of deposit, involved in

this case. Lone Star has a security interest, but the bank's sole right to the certificate of deposit arises from its setoff against the certificate of deposit. Since the question presented is solely that of setoff, Tex.Bus. & Comm.Code Ann. § 9.104(9) (Tex. UCC Supp.1974) indicates no provision of the Uniform Commercial Code is applicable to the resolution of the question.

As demonstrated by the Supreme Court's post-UCC opinions in Hudnall v. Tyler Bank and Trust Co., 458 S.W.2d 183 (Tex.1970) and Citizens National Bank v. Hill, 505 S.W.2d 246 (Tex.1974), it is clear that the rule of *National Indemnity* is still the law in Texas. The majority opinion seeks to distinguish these cases by the fact that they did not involve a certificate of deposit. However, a certificate of deposit may evidence a general or special deposit depending upon the particular facts involved. Martin v. First State Bank, 490 S.W.2d 208, 211 (Tex.Civ.App.—Amarillo 1973, no writ); 9 C.J.S. *Banks and Banking* § 315, at 641 (1938). Additionally, it should be noted that the *Martin* court applied the *National Indemnity* rule to a certificate of deposit case finding:

> On the other hand a deposit made for some special application or disposition is a *special* deposit and when a bank knowingly accepts a deposit for a specific purpose, it cannot thereafter divert it for its own benefit or otherwise act to defeat the purpose for which the deposit was made. . . . A special deposit, or one made for a specific purpose, differs from a general deposit in that title to the special deposit does not pass to the bank. . . . [A]nd the relationship created by the deposit is that of bailor and bailee, rather than that of creditor and debtor. (With authorities cited therein)

The *Martin* case also points out that the determination of whether a deposit is a general or a special deposit turns on the

---

2. No one has urged that any section of article 4 of Tex.Bus. & Comm.Code Ann. (Tex. UCC 1968), which deals with banking deposits and collections, is applicable in this case.

mutual intentions and understandings of the parties, "as revealed by their agreements and all of the circumstances of the case involved."

The trial court, in its findings of facts and conclusions of law, found that the bank had actual notice and knowledge that the certificate of deposit was pledged to Lone Star°as security for the loan of Lone Star to Hamilton in the amount of $30,000. The uncontradicted evidence in this case shows that Murdock, an officer of the bank, attended the closing between Lone Star and Hamilton. This officer observed Hamilton sign a security agreement and turn the agreement and the certificate of deposit over to Lone Star. This bank officer then accepted $30,000 in funds supplied by Lone Star in payment of the certificate of deposit. The court found that the bank had actual knowledge that the certificate had been pledged to Lone Star; that the $30,000 which funded the purchase of that certificate of deposit belonged to Lone Star; and that Lone Star had an interest in such certificate. Under these findings the question of setoff is definitely one of banking law which has long since been established by the Supreme Court in *National Indemnity*. I would construe these findings and conclusions of the trial court as being final with regard to the question of whether or not the bank agreed to the quasi-trust agreement in this case. Therefore, I would deny the offset and affirm the judgment of the trial court, but not based on any strained construction of the Uniform Commercial Code.

## ON MOTION FOR REHEARING

GUITTARD, Justice.

The bank argues in its motion for rehearing that we should remand the case for a new trial because there is no evidence that the certificate of deposit in question "is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment," within § 9.105(a)(9) of the Code.[1] The bank insists that the "ordinary course of business" of banks regarding non-negotiable certificates of deposit has not been proved.

We do not agree that the status of the certificate as an "instrument" within the Code is a matter of fact to be left to the uncertainties of oral testimony. Such a holding would be contrary to the underlying purpose of the Code to "simplify, clarify and modernize the law governing commercial transactions." Section 1.102(b)(1). It would result, instead, in uncertainty and confusion because a person lending money to the holder of such a certificate would have difficulty in determining whether he should perfect his security interest by taking possession of the collateral under § 9.304(a) or by filing a financing statement with the Secretary of State under §§ 9.302(a) and 9.401.

Simplicity and clarity in such transactions is better achieved by holding as a matter of law that a non-negotiable certificate of deposit is an "instrument" as defined by § 9.105(a)(9). Unquestionably, it satisfies the requirement in this definition of a "writing which evidences the right to the payment of money." We conclude that it also is "of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment."

The word "type" may be interpreted either narrowly or broadly. In the light of the general purpose of the Code, we do not construe it narrowly to refer only to writings of exactly the same character, such as, in this case, other non-negotiable certificates of deposit. Instead, we construe it broadly to include any writing which, like a stock certificate or negotiable instrument, is treated as a token of the rights it represents and, therefore, is normally delivered to any person to whom the rights are trans-

1. All references in this opinion are to Tex.Bus. & Comm.Code Ann. (Tex. UCC 1968), as amended.

534

ferred. The certificate in question resembles such instruments more than it resembles ordinary deposit accounts, which are expressly distinguished from certificates of deposit in § 9.105(a)(5), and are governed by different rules set out in chapter 4 of the Code. It is a writing which the holder must keep and present as evidence of his right, as its language expressly provides. It may easily be delivered by one party to another in the course of a commercial transaction. Possession of such a certificate can normally be expected to give the issuer and others notice that the possessor claims some interest in the rights which it represents. Such notice is more effective and more commercially reasonable than filing a financing statement with the Secretary of State. If the certificate is accompanied by an assignment from the original depositor, the issuer would have no reason to refuse payment to the assignee. Accordingly, we hold that the certificate in question, as a matter of law, is "of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment."

The bank insists that if some third party, such as Lone Star in this case, should present the certificate, the bank would not be required to pay because the third party would not be the "depositor" to whom the bank had agreed to pay the money. This argument erroneously assumes that the certificate is nonassignable as well as non-negotiable. Although the certificate is non-negotiable because it is not "payable to order or to bearer" within § 3.104(a)(4), and, therefore, a transferee could not be a holder in due course, it is nevertheless assignable, like any other contract right not involving personal trust or confidence. Ray v. Spencer, 208 S.W.2d 103, 104 (Tex.Civ. App.—Texarkana 1947, writ ref'd). Nothing in the certificate or in the Code limits its assignability. If the third party should present the certificate to the bank, together with an assignment signed by the depositor, the bank, on paying the amount of the certificate, would be protected against liability to the depositor by possession of the certificate as well as by the assignment.

Indeed, the bank does not deny all liability to Lone Star as assignee of the certificate, but only denies liability to the extent of the offset which the bank claims. But, since we hold that the certificate is "of a type which is in ordinary course of business transferred by delivery of possession with any necessary indorsement or assignment," and, therefore, is an "instrument" within § 9.105(a)(9), Lone Star perfected its security interest by taking possession under § 9.304(a), and the security interest so perfected prevails over the claimed offset.

Motion overruled.

AKIN, J., concurs in this opinion.

CLAUDE WILLIAMS, C. J., concurs in the order overruling the motion for rehearing only for the reasons set forth in his concurring opinion.