**TEXAS BANK AND TRUST CO., Appellant,**

v.

**SPUR SECURITY BANK, Appellee.**

**No. 07–85–0119–CV.**

Court of Appeals of Texas, Amarillo.

Feb. 19, 1986.

Rush S. Wells, William F. Warnick, Lubbock, for appellant.

M. Jo White, Law Offices of Jack McClendon, Lubbock, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

REYNOLDS, Chief Justice.

The trial court summarily adjudged that the proceeds of a non-negotiable certificate of deposit, which had been transferred and assigned to a bank with the written consent of, but subject to a claimed equitable setoff by, the issuing bank, belonged to the assignee bank rather than to the issuing bank. Because a genuine issue of material fact exists, we reverse and remand.

On 5 April 1983, Texas Bank and Trust Co. in Lubbock issued to depositors Jo Helen Boothe or Melvin Boothe its 26 week "money market" certificate of deposit no. 2157 imprinted "NOT NEGOTIABLE—NOT SUBJECT TO CHECK." The certificate was in the sum of $10,000, bearing interest at the annual rate of 8.955% payable quarterly, and maturing on 4 October 1983. A provision of the certificate reads, in part, as follows:

> Payable to the depositor upon presentation and surrender of this certificate, properly endorsed, on a maturity date. If more than one depositor is named above, and unless specifically indicated therein to the contrary, this certificate and the deposit evidenced thereby, shall belong to said depositors ... provided, however, for all purposes, including endorsement, payment of principal and interest, presentation, transfer, and any notice to or from the depositors, this institution may deem and treat as the

absolute owner hereof any one depositor named above....

And the certificate contains this further provision: "This Certificate and any right hereunder may not be transferred or assigned without the written consent of this institution."

Thereafter, Melvin Boothe endorsed the certificate in blank and delivered it, together with his security agreement executed on 20 June 1983 and listing the certificate and another item as collateral, to Spur Security Bank· in Spur to secure payment of his note, dated 20 June 1983 and indicated as an unsecured note, in the principal sum of $41,671.21, bearing interest at the annual percentage rate of 14%, and payable to the order of the bank on 16 December 1983. Subsequently, by letter dated 26 August 1983, the president of Spur Bank, advised Texas Bank that Boothe had pledged the certificate as collateral on his note, and requested Texas Bank to mark its records to reflect the pledge and acknowledge the same.

In reply, by letter dated the following September 1, the president of Texas Bank informed Spur Bank that

> you are no doubt aware that irregularities involving Mr. Boothe have been discovered which appear to have resulted in a substantial loss to this bank.
>
> On advice of Counsel, in order to protect the bank's interests, we placed an administrative hold on these funds effective August 24, 1983. This date coincides with the date that we became certain of Mr. Boothe's involvment [sic] in the loss situation.
>
> Your assignment is hereby acknowledged. Please be advised, however; that since our "Hold" date preceeds [sic] your notification date, your assignment is inferior and subject to that hold in favor of Texas Bank and Trust Co.

The statements of Boothe's involvement refer to a scheme by which Texas Bank lost funds in excess of the amount of the certificate. For his involvement in the scheme, Boothe, an employee of Texas Bank, was convicted in federal court and sentenced to a federal correctional institution.

Following the maturity of the certificate, Boothe defaulted on his note and Spur Bank foreclosed on its security. When Texas Bank refused to release the proceeds of the certificate, Spur Bank instituted this action, seeking a declaratory judgment that it has a valid lien on, and is entitled to, the proceeds of the certificate.

After Texas Bank answered, Spur Bank moved for summary judgment, supporting its motion with copies of the certificate, the note and security agreement, the exchanged letters, and affidavits. In turn, Texas Bank moved for summary judgment on the same documents and the affidavit of its president, who stated that Texas Bank had exercised its right of setoff against the funds evidenced by the certificate prior to receiving notice of any assignment thereof.

Then, Spur Bank supplemented its summary judgment motion and attached the affidavit of Ransom Galloway, who spoke as Chairman of the Board and Chief Executive Officer of Texas Bank, albeit the record reveals that he also was Chairman of the Board and Chief Executive Officer of Spur Bank. By his affidavit, Galloway swore that when Boothe pledged the certificate "[o]n June 16, 1983 ... as security for a loan from Spur Security Bank ..." he, Galloway, as Chairman of the Board and Chief Executive Officer of Texas Bank, "had full knowledge ... that Certificate of Deposit No. 2157 was a special deposit pledged as security to Spur Security Bank," and at that time, "neither I, nor anyone else at Texas Bank and Trust Co., had reason to suspect that Mr. Boothe was involved in any wrongdoing in connection with funds on deposit at Texas Bank and Trust Co." In contravention, Texas Bank filed the affidavit of its president, who vowed there was no evidence at Texas Bank, either in the files or known to other officers employed at the time of the pledge, and he had no knowledge, of any notice of Boothe's purported assignment of the certificate prior to receipt of the letter from the president of Spur Bank.

The trial court, finding that Texas Bank is not, and Spur Bank is, entitled to summary judgment, rendered summary judgment decreeing that Spur Security Bank recover from Texas Bank and Trust Co. the sum of $10,000, together with prejudgment and postjudgment interest. Appealing, Texas Bank advances, with the first two of its three points of error, the contentions that unresolved factual issues and the lack of proof that the certificate represented a special deposit precluded summary judgment for Spur Bank and, with its third point, the contention that since its right of setoff remained unimpaired, it should have been granted summary judgment. Upon the rationale to be expressed, we sustain the first two points and overrule the third point.

At the outset, we notice that although the imprinted "NON–NEGOTIABLE" legend on the certificate makes the certificate non-negotiable, *Amarillo Nat. Bank v. Dilday*, 693 S.W.2d 38, 41 (Tex.App.—Amarillo 1985, no writ), the certificate's provisory language relative to transfer or assignment is a contractual recognition that it may be transferred and assigned with the written consent of Texas Bank. There is no dispute that Texas Bank did give its written consent to Boothe's transfer and assignment of the certificate to Spur Bank, subject only to its asserted offset. Thus, Spur Bank took the certificate subject to any defenses and equities that could be successfully urged against it. *General Motors Acceptance Corporation v. Matson*, 336 S.W.2d 628, 630 (Tex.Civ. App.—Austin 1960, no writ). The primary question, then, is whether either bank conclusively established the priority of its claim to the proceeds of the certificate.

Ordinarily, funds placed with a bank become general deposits owned by the bank, and create a debtor-creditor relationship between the bank and the depositor. A special deposit signifies a deposit accompanied by an agreement that the identical deposit will be returned or paid out for a specific purpose, and creates a bailee-bailor relationship between the bank and the depositor. *Hudnall v. Tyler Bank and Trust Company*, 458 S.W.2d 183, 186 (Tex.1970). Thus, a certificate of deposit may evidence, as revealed by the agreement of the depositor and the bank in the light of the factual circumstances, either a general deposit, which is subject to an offset by a bank for a debt owed it by the depositor, or a special deposit, which is not subject to an offset. *See, e.g., Martin v. First State Bank, Memphis*, 490 S.W.2d 208, 211 (Tex.Civ.App.—Amarillo 1973, no writ).

We recognize, as Spur Bank points out, that in deciding *Ames v. Great Southern Bank*, 672 S.W.2d 447 (Tex.1984), our Supreme Court stated: "A certificate of deposit is a bank's written acknowledgement of a *special* deposit of money which the bank promises to pay to the order of a designated person, or to bearer." *Id.* at 449 (emphasis added). Yet, considering the context in which the statement was made, we neither perceive nor accept it to be a characterization of a deposit evidenced by a certificate as being a special one in the usual sense that a special deposit, as referred to in *Martin v. First State Bank, Memphis, supra*, means trust funds, which a bank may not seize and retain to offset a debt of the depositor. *National Indemnity Co. v. Spring Branch State Bank*, 162 Tex. 521, 348 S.W.2d 528, 529–31 (1961). Instead, we consider that the *Ames* court characterized the deposit as special merely in the sense that it is distinguishable from the normal deposit by the manner in which the deposited funds are withdrawn. This consideration obtains because of, and is reinforced by, the next two *Ames* sentences, which state:

The provisions of a certificate of deposit form a contract which creates the relationship of debtor and creditor between the bank and its depositor. *Mesquite State Bank v. Professional Investment Corp.*, 488 S.W.2d 73 (Tex.1972). Such contract determines the manner in which the funds of the depositor may be withdrawn and is subject to the law of con-

tracts. *Frost National Bank v. Nicholas and Barrera*, 534 S.W.2d 927 (Tex. Civ.App.—Tyler 1976, writ ref'd n.r.e.). 672 S.W.2d at 449. Not only were the courts in the two referenced cases speaking solely of a general deposit which, as the court in *Mesquite State Bank* said, creates the debtor-creditor relationship, 488 S.W.2d at 75, but it is the consistent holding of our Supreme Court that it is only a general deposit, not a special deposit, which creates the debtor-creditor relationship. *See, e.g., Sears v. Continental Bank & Trust Co.*, 562 S.W.2d 843, 844 (Tex.1977); *Citizens National Bank of Dallas v. Hill*, 505 S.W.2d 246, 248 (Tex.1974); *Hudnall v. Tyler Bank and Trust Company, supra.*

■ It necessarily follows from the cited authorities that the deposit evidenced by certificate no. 2157, unaccompanied by any other agreement so far as the record shows, is a general deposit, against which Texas Bank has the equitable right, unless preempted by a superior claim, to offset the indebtedness owed it by Boothe. *First Nat. Bank of Schulenburg v. Winkler*, 139 Tex. 131, 161 S.W.2d 1053, 1056 (1942). Contrary to Spur Bank's advocation, this determination is not altered by affiant Galloway's statement that he, in his official position, had full knowledge that the deposit was a special deposit, or the failure of Texas Bank to controvert the statement in the trial court. Galloway's bare statement, unattended by any admissible factual verification, is a mere conclusion, which is neither competent evidence to support the summary judgment rendered for Spur Bank, *Hidalgo v. Surety Savings and Loan Association*, 487 S.W.2d 702, 703 (Tex.1972), nor sufficient to raise an issue of fact on the nature of the deposit. *Life Ins. Co. of Virginia v. Gar-Dal, Inc.*, 570 S.W.2d 378, 382 (Tex.1978). Moreover, the failure of Texas Bank to controvert the statement of special deposit did not entitle Spur Bank to summary judgment by default on that ground when its proof is legally insufficient. *City of Houston v.*

*Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979).

■ In addition, the record before us, as developed, does not conclusively establish the priority of one of the competing claims by the banks over the other. As previously shown, the certificate of deposit formed the contract between Texas Bank and the Boothes and, contractually, Boothe could not transfer or assign the certificate, and the rights thereunder, without the consent of the bank. *Reef v. Mills Novelty Co.*, 126 Tex. 380, 89 S.W.2d 210, 211 (1936). So, when Boothe delivered the endorsed certificate and executed his security agreement to Spur Bank without the written consent of Texas Bank, Spur Bank, although obtaining a perfected security interest in the certificate, *First Nat'l Bk. in Grand P. v. Lone Star Life Ins. Co.*, 524 S.W.2d 525, 530, 534 (Tex.Civ.App.—Dallas), *writ ref'd n.r.e.*, 529 S.W.2d 67 (Tex.1975), took the assignment subject to the terms of the certificate of deposit contract, including the consent provision, *Reef v. Mills Novelty Co., supra*, and subject, upon receiving Texas Bank's consent to the transfer and assignment, to any claim of Texas Bank against the deposit that occurred before it received notification of the assignment. *Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex.Civ.App.—San Antonio 1959, writ ref'd n.r.e.).

■ The Texas notice statute specifies that:

(25) A person has "notice" of a fact when

(A) he has actual knowledge of it; or

(B) he has received a notice or notification of it; or

(C) from all the facts and circumstances known to him at the time in question he has reason to know that it exists.

\*　\*　\*　\*　\*　\*

Tex.Bus. & Com.Code Ann. § 1.201(25) (Vernon 1968). Generally, notice is a question of fact to be determined by the trier of

**354**

fact; it becomes a question of law only when there is no room for ordinary minds to differ on the proper conclusion to be drawn from the evidence. *O'Ferral v. Coolidge*, 149 Tex. 61, 228 S.W.2d 146, 148 (1950).

We cannot say that ordinary minds would unanimously agree, from the relevations of this summary judgment record, when Texas Bank had notice of Boothe's transfer and assignment of the certificate of deposit to Spur Bank. Galloway stated in his affidavit that he, as the premier officer of Texas Bank, had full knowledge on 16 June 1983, before Boothe's involvement in any wrongdoing was suspected, that Boothe had pledged the certificate as security for a loan from Spur Bank, albeit the record documents with certification that the loan was made on 20 June 1983. The president of Texas Bank stated in his affidavits that there was no evidence in the bank's files or known to any officer employed by the bank at that time of any notice of Boothe's purported assignment until the receipt of the 26 August 1983 letter from Spur Bank's president, which was dated two days after Texas Bank became certain of Boothe's involvement and seized the deposit.

Obviously, the testimonial affidavits of the Texas Bank's two highest officers sharply conflict with respect to the time of notice and, thereby, raise an issue of fact, which precludes summary judgment for either bank. *Gaines v. Hamman*, 163 Tex. 618, 358 S.W.2d 557, 562–63 (1962). If upon a conventional trial of the cause the same testimony should be offered, the credibility of the two officers would be in issue. It never has been the office of the court hearing a motion for summary judgment to determine the credibility of affiants and try the cause on affidavits. *Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 931 (1952).

Accordingly, the summary judgment rendered by the trial court is reversed, and the cause is remanded.