Hemphill v. Smith 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-471-CV





RUTH M. HEMPHILL,



 APPELLANT


vs.





JOHN B. SMITH AND GAYLORD MAGNUSON,



 APPELLEES


 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT



NO. 473,039, HONORABLE JERRY DELLANA, JUDGE PRESIDING



 





PER CURIAM


 Appellant Ruth Hemphill sued appellees John Smith and Gaylord Magnuson for
conversion, breach of a claimed duty of good faith and fair dealing, and violations of the
Deceptive Trade Practices--Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41-.854 (West 1987 & Supp. 1993) (DTPA). From the trial court's grant of summary judgment for
Smith and Magnuson, Hemphill brings this appeal. We will affirm the judgment of the trial court.

 Hemphill's claims stem from Southwest National Bank's offset of a certificate of
deposit on which she and her son were payees. Hemphill initially sued the bank, and at a later
time not shown of record, amended her petition to name Smith and Magnuson as defendants. 
Smith was the Senior Vice President and Magnuson the President of the bank when the offset
occurred; Hemphill sued each in his individual capacity. Hemphill's suit was removed to federal
district court, which dismissed the bank and remanded the cause to state district court, leaving as
defendants only Smith and Magnuson.

 Smith and Magnuson, the movants for summary judgment, had to disprove as a
matter of law one of the essential elements of each of Hemphill's causes of action. Citizens First
Nat'l Bank v. Cinco Exploration Co., 540 S.W.2d 292, 294 (Tex. 1976). In reviewing a
summary judgment, we take as true all evidence favoring the nonmovant, indulging every
inference and resolving every doubt in her favor. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985).

 The summary-judgment evidence shows that Hemphill bought a $25,000 certificate
of deposit, or CD, from Southwest National Bank. The CD was made payable to the order of
"Ruth M. Hemphill or Thomas A. Hemphill." Hemphill states in her affidavit that she placed the
name of her son Thomas Hemphill on the CD to limit her individual deposits at the bank to
$100,000. When Hemphill made the deposit, her son was indebted to the bank on a promissory
note. After Thomas Hemphill defaulted on the note, the bank offset the CD against the balance
due on the note.

 In point of error four, Hemphill argues that a fact issue exists on her cause of
action for conversion. Hemphill claims that offsetting a joint account against the debt of one
depositor is evidence of dominion, an element of conversion. 

 To sue for the conversion of money, the money must be identifiable as a specific
chattel. If a debt can be discharged by paying money generally, a suit in conversion to enforce
it is inappropriate. Eckman v. Centennial Sav. Bank, 757 S.W.2d 392, 398 (Tex. App.--Dallas
1988, writ denied); Crenshaw v. Swenson, 611 S.W.2d 886, 891 (Tex. Civ. App.--Austin 1980,
writ ref'd n.r.e.). Hemphill's ability to sue in conversion for the allegedly wrongful setoff
depends on whether she made a general or a special deposit. Martin v. First State Bank,
Memphis, 490 S.W.2d 208, 211 (Tex. Civ. App.--Amarillo 1973, no writ). A special deposit
arises from a deposit accompanied by an agreement that the identical deposit will be returned or
that it will be paid out for a specific purpose; a special deposit is a trust fund. Hudnall v. Tyler
Bank & Trust Co., 458 S.W.2d 183, 186 (Tex. 1970); Texas Bank & Trust Co. v. Spur Sec. Bank,
705 S.W.2d 349, 352 (Tex. App.--Amarillo 1986, no writ). Unless a specific agreement to the
contrary exists, a bank deposit is presumed to be a general deposit that the bank will mingle with
its other funds. Hudnall, 458 S.W.2d at 186; Martin, 490 S.W.2d at 211. To recover a general
deposit that the bank has offset, a depositor cannot sue for conversion, but must sue for breach
of the depository contract. Upper Valley Aviation, Inc. v. Mercantile Nat'l Bank, 656 S.W.2d
952, 955 (Tex. App.--Dallas 1983, writ ref'd n.r.e.); First Nat'l Bank v. Hubbs, 566 S.W.2d 375,
377 (Tex. Civ. App.--Houston [1st Dist.] 1978, no writ).

 The mutual understandings of the parties, shown by the provisions of the certificate
of deposit and the circumstances of the case, determine whether Hemphill's deposit was a special
or a general one. Texas Bank & Trust Co., 705 S.W.2d at 352; Martin, 490 S.W.2d at 211; see
generally Mesquite State Bank v. Professional Inv. Corp., 488 S.W.2d 73, 75 (Tex. 1973). The
summary-judgment evidence includes a copy of the certificate of deposit and a transcription of
Hemphill's deposition testimony. The certificate provides on its face that on August 8, 1988,
Ruth M. Hemphill or Thomas A. Hemphill deposited $25,000 with the bank, payable to order
with interest after two years. Further terms provide the manner of surrendering the certificate,
negate its transferability and negotiability, and provide a penalty for early withdrawal. Hemphill
testified at her deposition that when she bought the certificate, she knew that Tom owed the bank
money and that he was having trouble meeting that obligation. She knew when she made the
deposit that either she or Tom could withdraw the money any time. Hemphill admitted that when
she purchased the certificate, she never told the bank that Tom could not have access to the
money, that she wanted special treatment for the deposit, that the deposit was a trust account, or
that the deposit was not to be mingled with the general funds of the bank. This evidence
conclusively shows that the certificate of deposit was a general deposit, rather than a special
deposit for a special purpose. E.g., Texas Bank & Trust Co., 705 S.W.2d at 353. Because a
general deposit is not subject to a suit for conversion, Hemphill's conversion cause fails as a
matter of law. We therefore overrule point four.

 In point of error one, Hemphill argues that material facts are disputed as to whether
Smith and Magnuson misrepresented the risk of offset. DTPA § 17.46(b) (West 1987). Hemphill
claims that a brochure the bank distributed led her to believe that placing the CD in the names of
herself and her son would make it "safe." She also claims that the brochure, as well as the bank
employee from whom she purchased the CD, failed to tell her that if she possessed the CD jointly,
the bank could offset the CD against her son's debt to the bank. Hemphill's argument assumes
that the bank's offset against her son's debt was valid and challenges only the officers' failure to
notify her of the bank's right of set-off.

 The summary-judgment record includes the brochure. It explains the protection
the Federal Deposit Insurance Corporation affords bank deposits and shows how depositors can
establish accounts to increase their insurance protection. Hemphill claims that she followed an
example in the brochure when she chose to put the CD in both names. Rather than guaranteeing
that joint bank accounts will be generally safe, however, the brochure explicitly states that the
Corporation's insurance protection covers only the loss a depositor sustains through the closing
of an insured bank. The brochure could not have misled Hemphill to believe that by possessing
the CD jointly, she made the deposit safe generally.

 Hemphill further claims that the brochure and the employee who sold her the CD
failed to warn her that if possessed jointly, the CD could be offset against her son's debts to the
bank. Hemphill attributes this failure to Smith and Magnuson as bank officers who authorized
a policy of omitting the warning. Hemphill maintains that the officers failed to disclose the risk
of offset, intending to induce her to place the CD in both names when she otherwise would not
have. DTPA § 17.46(b)(23). Whether the officers committed a deceptive trade practice by failing
to inform Hemphill depends first on whether they had a duty to inform her of the risk. McNeill
v. McDavid Ins. Agency, 594 S.W.2d 198, 202 (Tex. Civ. App. 1980, no writ).

 Hemphill cites no authority for her contention that a bank must disclose its right
of offset to a depositor, and we have found none. A bank's right of offset arises as an extension
of the debtor/creditor relationship between a bank and its general depositor: the bank owes the
depositor the amount deposited with it, and the bank has the right to offset against that amount
a sum equal to the indebtedness the depositor owes it. Sears v. Continental Bank & Trust Co.,
562 S.W.2d 843, 844 (Tex. 1977). A bank may exercise its right of offset without giving notice
to the depositor. Baldwin v. Peoples Nat'l Bank, 327 S.W.2d 616, 620 (Tex. Civ.
App.--Texarkana 1959, no writ); see Elizarraras v. Bank of El Paso, 631 F.2d 366 (5th Cir. 1980)
(interpreting Texas law as not requiring notice of offset); 5A Michie on Banks and Banking,
Deposits § 115a (1983); 9 C.J.S. Banks and Banking § 296 (1938). Further, the bank's right of
offset does not depend on the depositor's consent. Steere v. Stockyards Nat'l Bank, 266 S.W.
531, 536 (Tex. Civ. App.--Fort Worth 1924, writ ref'd); see 9 C.J.S. Banks and Banking § 296
(1938). That the bank's right of offset exists independently of the depositor's consent and that
notice is not required to exercise it support a determination that the bank here had no duty to
notify Hemphill of its right of offset.

 Because the bank had no duty to notify Hemphill of the risk of offset, it follows that
the officers had none. Because Hemphill has failed to show that a fact issue exists on the officers'
misrepresentation, we overrule point one.

 Points of error two and three concern Smith and Magnuson's liability for wrongful
offset. In point two, Hemphill contends that Smith and Magnuson failed to establish conclusively
the bank's right to offset the CD against her son's debt. Hemphill argues that because Smith and
Magnuson did not prove that her son had an ownership interest in the CD, the bank had no right
to offset the CD. In point three, Hemphill argues that a fact issue exists whether Smith and
Magnuson are individually liable for wrongfully authorizing the offset while acting in the scope
of their employment. Hemphill does not explain in her argument how points two and three relate
to the causes she asserted in the trial court. In her brief on appeal, however, Hemphill has placed
points one through three under the heading "DTPA." We will therefore construe her argument
under points two and three to be that the officers' authorization of the offset was wrongful and a
violation of the DTPA because the bank lacked the right of offset. See O'Neil v. Mack Trucks,
Inc., 542 S.W.2d 112, 113-14 (Tex. 1976).

 As discussed above, the CD represented a general deposit with the bank. The
relationship of a bank to a general depositor is contractual. American Bank v. Waco Airmotive,
Inc., 818 S.W.2d 163, 170 (Tex. App.--Waco 1991, writ denied); Upper Valley Aviation, Inc.,
656 S.W.2d at 955. Here, the provisions of the CD formed the contract, one term of which
obligated the bank to pay the proceeds to the order of Hemphill or her son. Ames v. Great S.
Bank, 672 S.W.2d 447, 449 (Tex. 1984). A depositor's remedy for the wrongful offset of a
general account is an action for breach of the depository contract, an action based on debt. Waco
Airmotive, Inc., 818 S.W.2d at 170; Upper Valley Aviation, Inc., 656 S.W.2d at 955. A mere
breach of contract is not a violation of the DTPA. La Sara Grain Co. v. First Nat'l Bank, 673
S.W.2d 558, 565 (Tex. 1984); Ashford Dev., Inc. v. USLife Real Estate Servs. Corp., 661
S.W.2d 933, 935 (Tex. 1983); Coleman v. Hughes Blanton, Inc., 599 S.W.2d 643, 646 (Tex.
Civ. App.--Texarkana 1980, no writ).

 The term of the contract obligating the bank to pay the proceeds of the CD to the
order of Hemphill or her son plainly rendered the bank the contractual obligor. While a corporate
officer who knowingly participates in a tortious or fraudulent act can be individually liable to third
persons, an officer who participates in the breach of a corporate contractual obligation will not
incur individual liability. Grierson v. Parker Energy Partners 1984-I, 737 S.W.2d 375, 377 (Tex.
App.--Houston [14th Dist.] 1987, no writ); Barclay v. Johnson, 686 S.W.2d 334, 336-37 (Tex.
App.--Houston [1st Dist.] 1985, no writ); Gardner Machinery Corp. v. U. C. Leasing, Inc., 561
S.W.2d 897, 899 (Tex. Civ. App.--Beaumont 1978, writ dism'd). We decline to follow Security
Bank v. Dalton, a case in which the court affirmed a judgment imposing individual liability on a
bank president for wrongful dishonor. 803 S.W.2d 443, 449-50 (Tex. App.--Fort Worth 1991,
writ denied). The opinion in Dalton is internally inconsistent because it treats wrongful dishonor
as a tort for the purpose of imposing individual liability, but as a breach of contract for the
purpose of denying recovery for exemplary damages. In addition, recovery for wrongful dishonor
is governed by a specific statute, while wrongful offset has no statutory basis. See Tex. Bus. &
Com. Code Ann. § 4.402 cmt. (West 1968). Assuming that Smith and Magnuson participated in
a breach of the bank's contractual obligation by wrongfully authorizing the offset, Hemphill's
recovery for the breach was against the bank, not against Smith and Magnuson. We therefore
overrule points two and three.

 In point of error five, Hemphill argues that a fact issue remains whether Smith and
Magnuson breached the duty of good faith and fair dealing by authorizing the offset. Because no
duty of good faith and fair dealing exists in Texas between creditors and debtors, we overrule
point five. Federal Deposit Ins. Corp. v. Coleman, 795 S.W.2d 706, 708-710 (Tex. 1990);
Dalton, 803 S.W.2d at 447-49; Georgetown Assocs., Ltd. v. Home Fed. Sav. & Loan Ass'n, 795
S.W.2d 252, 255-56 (Tex. App.--Houston [14th Dist.] 1990, writ dism'd w.o.j.).

 We affirm the judgment of the trial court.


[Before Chief Justice Carroll, Justices Aboussie and Jones]

Affirmed

Filed: June 2, 1993

[Do Not Publish]