## HARRIS et al. v. WHEELER.
### (Nos. 598–4073.)

(Commission of Appeals of Texas, Section A. Dec. 20, 1924.)

**1. Contracts** ⬅➡221(3)—**Instrument payable on condition, not importing absolute liability, not payable until condition happens.**

Instrument payable on condition, not importing absolute liability, is not payable until such condition has happened.

**2. Brokers** ⬅➡64(2)—**Agent selling oil lease held not entitled to commission on amount paid therefor by sellers at receiver's sale after abandonment by lessee.**

Agent, to whom principals agreed to pay commission for selling oil lease from cash payment and deferred payments as made, *held* not entitled to commission on amount paid by principals for lease at receiver's sale, after abandonment by lessee, where only provision therein for payment of balance due was that lessors should receive stated sum per barrel of oil run until paid.

**3. Appeal and error** ⬅➡843(4)—**Sufficiency of pleadings on certain issue not discussed on reversal on another issue.**

Pleadings being amendable on retrial, sufficiency thereof on certain issue need not be discussed, where case is reversed on another issue and remanded to trial court.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by L. Wheeler against R. T. Harris and others. Judgment for plaintiff affirmed by Court of Civil Appeals (255 S. W. 206), and defendants bring error. Reversed and remanded to trial court.

Bonner, Bonner & Sanford, of Wichita Falls, and O. F. Wencker, of Dallas, for plaintiffs in error.

Hunter & Scott, of Wichita Falls, for defendant in error.

CHAPMAN, J. R. T. Harris and several associates were joint owners of a five-acre producing oil lease in Wichita county, which they were operating under the name of Gray Gander Oil Company. Through one L. Wheeler as agent, sale of the lease was made to Ralph R. Langley of Kansas City, Mo. The consideration from Langley to Harris and associates was in these words:

"Whereas, said present owners have sold said property to Ralph R. Langley of Kansas City, Missouri, for the sum of four hundred twenty-five thousand ($425,000.00) dollars paid and to be paid as follows: One hundred thousand ($100,000.00) dollars cash in hand paid, the receipt of which is hereby acknowledged; fifty thousand ($50,000.00) dollars evidenced by the note of the said Langley, of even date herewith, payable to R. T. Harris, bearing interest from maturity at the rate of eight (8) per cent. per annum, providing for attorneys fees clause payable at Wichita Falls, Texas, due thirty (30) days after date; two hundred seventy-five thousand ($275,000.00) dollars to be paid out of the production from said lease run to the account of the seven-eighths working interest of the lessee as follows: For every barrel of oil so run to the account of the seven-eighths working interest of the lessee, $1.50 shall be paid to the assignors, to be paid to R. T. Harris for the assignors, he being authorized to collect the same, receipt therefor and execute all division orders and all other instruments necessary to obtain the same; said money so paid out of the production shall be paid directly to the said Harris by the pipe line companies or other parties purchasing said oil."

There is also in the contract this provision:

"As a part of the consideration for this conveyance the said Ralph R. Langley hereby binds himself, his heirs, executors, administrators and assigns to continue the operation of the wells on the lease of the above described five acres in an efficient manner to the end that the monies to be paid out of production to the assignors may be paid as early as practicable."

Wheeler's commission was provided for in a letter to him from Harris in these words:

"Wichita Falls, Tex., Sept. 15, 1919.

"L. Wheeler: I agree to pay you commission of ($25,000.00) twenty-five thousand dollars out of sale price of Gray Gander Oil Co. Commission to be prorated as to cash payment and deferred payment, you to get your proportion of the cash payment and the balance out of deferred payments as they are made by the purchaser.          [Signed]  R. T. Harris."

Wheeler accepted the terms of this letter in writing. The cash and note mentioned in the consideration were paid, and Wheeler received his commission on these items. Lessors were also paid $50,000 additional from the production, and Wheeler received

his commission on this item with the possible exception of a small amount of about $100. Langley then abandoned the lease and left the state and made no further payments. The assignors in the lease brought suit for the balance due them by Langley and for a foreclosure of an equitable purchase-money lien on the lease and recovered judgment for balance due, and for foreclosure of their lien. A receiver was appointed to make sale of the lease, and at the receiver's sale lessors bid in the property for $100,-000, which amount was credited on the judgment. Wheeler brought this suit against Harris and his associates to recover his pro rata of commission on the $100,000 without making any allegations as to production, and alleged that Harris in writing the letter to Wheeler was acting for the other defendants. Trial was without a jury, and judgment was rendered in favor of Wheeler for his commission on the $100,000, which judgment was affirmed by the Court of Civil Appeals. 255 S. W. 206.

The trial court found as facts that R. T. Harris, in executing the writing to Wheeler, by custom, practice, and consent, was acting for all his associates, and that said writing was intended to bind all his associates to pay the commisson mentioned therein, and that the commission paid by Harris to Wheeler on the amount received from the cash note, and production, was paid with the knowledge and consent of all his joint owners and associates out of the common fund, and that the deferred payments mentioned in the lease contract were made to R. T. Harris, who was acting for all the owners of the property and who received said moneys charged with the duty of paying plaintiff Wheeler his commission thereon as same was paid, and that all of said moneys was paid to Harris with the knowledge and consent of his associates. The lease was executed by Harris and all his joint owners.

There are two controlling questions before us for consideration: First, as to whether the agent, Wheeler, was entitled to a commission on the $100,000 bid by the lessors at the receiver's sale; second, as to whether the contract with the agent, signed by Harris, taken in connection with the facts found by the trial court, was sufficient to make the associates of Harris liable with him for any commission due the agent.

[1, 2] As to whether the agent was entitled to a commission on the $100,000 bid by the lessors at the receiver's sale depends on a construction of the two contracts, for they must be considered together. At the outset it must be taken into consideration that both the contracts grow out of the assignment of a producing oil lease. The amount that the agent was to receive under his contract with the lessor depended on the payments by lessee of the deferred payments. The contract between lessors and lessee provided for a cash payment of $100,000 and a note for $50,000, all of which was paid. There was no definite time fixed for the payment of the remaining $275,000, and no notes given for it, and no lien expressly reserved to secure it, and the only provision made for its payment was that for every barrel of oil run to the account of lessee, the lessors were to receive $1.50 until the balance was paid. If lessee had carried out its agreement in the contract to continue the operation of the wells on the lease in an efficient manner to the end that the moneys to be paid out of production to the assignors might be paid as early as practicable, and the lease ceased to produce oil after $200,000 had been paid by lessee, then the balance of $225,000 would never have been due, because the oil which was to be the measure of the payment could not be produced. It seems to us that the only construction that can be placed on the contract between lessors and lessee, that comports with justice, is that after payment of the cash and note lessors were to receive in addition thereto $1.50 for each barrel of lessee's part of the production not to exceed $275,000, and that it was not the intention of the parties that the whole of the $275,000 should be paid by lessee unless the wells produced enough oil that lessee's part at $1.50 per barrel would amount to that sum. As stated by Chief Justice Cureton, of our Supreme Court, in Ferguson v. Mansfield, 263 S. W. 900:

"It is quite elementary that an instrument payable upon a condition which does not import an absolute liability is not payable until that condition has happened."

If the payment by lessee of any sum other than the cash and note depended on the oil produced on the lease, then before lessors could recover such sum it would be necessary for them to allege and prove the production, or that production was prevented by lessee, and as the amount of the agent's commission depended on the amount received by the lessors, then he would likewise have to allege and prove the production as a basis for his recovery. The suit by lessors to recover their lease after it was abandoned by lessee, and after lessee had left the state, had the effect of an equitable suit in rem, and the amount bid by lessors at receiver's sale for the purpose of securing possession of their lease could not be used by the agent as a basis for the amount of his recovery. His contract provided for a different basis. We do not think that those cases where an agent sells real estate and his principal accepts notes for deferred payments and the agent is to get his commission in proportion as the payments are made, and the buyer defaults, and the seller obtains the property under foreclosure

sale, and the agent recovers commission on the amount bid by seller at such sale, apply to the facts in this case, for in those cases, the correctness of which we do not here undertake to determine, the amount to be received by the seller is definitely fixed by the notes, while in the instant case the amount to be received by the seller depends on the amount of oil produced on the lease.

[3] As to whether the contract with the agent signed by Harris, taken in connection with the facts found by the trial court, was sufficient to make the associates of Harris liable with him for any commission due the agent, we think the facts found by the court show that Harris was acting for his associates in making the contract with the agent and that they ratified his act, but we doubt if the pleadings are sufficiently full on this issue. In the event of another trial the pleadings may be amended, and as the case is reversed on another issue, we deem it unneccessary to further discuss the pleadings on this issue.

We recommend that the judgments of the Court of Civil Appeals and the district court be reversed, and that the case be remanded to the trial court.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court. We approve the holding of the Commission of Appeals on the question discussed in its opinion.