**YOUNG & PRATT v. SOUTHWEST INSULATION & PACKING CO.**

No. 8221.

Court of Civil Appeals of Texas. Austin.

April 24, 1936.

Rehearing Denied May 20, 1936.

Yelderman & Yelderman and Vernon Lemens, all of Austin, for appellants.

Reed & Currie, of Dallas, and Bailey W. Hardy, of Austin, for appellees.

McCLENDON, Chief Justice.

Appellees, copartners under the above trade-name, sued appellants, also copartners, for breach of a written contract whereby appellants agreed to purchase from appellees certain insulation material to be used by appellants in performing a contract, under which they were to do certain portions of the construction of nine buildings for the University of Texas. The contract was in the form of a letter, designated an order, addressed by appellants to appellees, containing the following stipulation: "This order is given with understanding that we get approval from the architects to use this material in place of make specified." The following portions of appellees' petition are pertinent to what we regard the controlling issue presented by the appeal:

"8. That, under and by virtue of the contract hereinabove mentioned, the defendants became obligated to the plaintiffs to submit the materials or samples furnished by said plaintiffs to the architects for approval; that, notwithstanding defendants were so bound and liable, in total disregard of the rights of these plaintiffs, these defendants wholly failed and refused to submit said materials, but on the contrary some three weeks after the execution of the aforesaid contract, to-wit, on or about May 28, 1932, defendants notified plaintiffs that they refused to comply with the terms of said contract and agreement.

"9. That under and by virtue of the conditional order, as hereinabove alleged, these defendants became bound and obligated to make a reasonable effort to obtain the approval of plaintiffs' materials from the architects, but that the defendants failed and refused to submit the same or to make any effort whatever to obtain the consent of the said architects to use the material offered by the plaintiffs and which the defendants had agreed to purchase.

"10. Plaintiffs would show that the specifications for each of the nine University of Texas buildings called for 'Phillip Carey or equal' and 'Johns Manville or equal'. That the material which plaintiffs agreed to sell and which the defendants agreed to purchase is equal to quality to the brands as specified and has been so recognized by the architects and by the University of Texas on some of these very buildings. That, therefore, these materials would have been accepted and approved by the said architects had the defendants made any attempt whatever to secure their approval."

The trial was to the court without a jury, and resulted in a judgment for appellees for $1,239.60, the net profits which they would have made had the contract been performed.

Appellees' theory of recovery, as set forth in the above quotation from their petition, was: That the contract imposed upon appellants the duty of submitting samples of their materials to the architects, and of making reasonable effort to have such material substituted for that specified; that they failed therein; that had they not so failed the substitution would have been allowed. For the purposes of this appeal we accept this theory. The trial court, however, construed the quoted stipulation as "an absolute promise and warranty on the part of the Defendants to get approval of the material," and excluded evidence proffered by appellants proving, or tending to prove, that, regardless of any efforts which appellants might have made, the architects would not have allowed the substitution. We have reached the conclusion

that this ruling of the trial court constituted reversible error, and will confine our statement of the case to this issue.

The contract sued upon was made May 12, 1932. Appellants' contract with the University was made prior to April 1, 1932. Appellees had read the specifications under which appellants were to do the work, and the contract in suit was made in reference thereto. These specifications contained the following with reference to substitutions of materials:

"47. Where a definite material is specified, it is not the intention to discriminate against an 'equal' product made by another manufacturer. It is, rather, the intention to definitely set a standard. Open competition is expected, but in all cases samples of a proposed substitute must be submitted for comparison and test, and no substitution shall be made unless authorized in writing by the Architects or their representative.

"48. In making up his bid the contractor shall include in his estimate the cost of the material or specialty specified. Within one month after the contract is awarded he shall submit to the Architects any proposals for substitutions that he may care to suggest, together with samples and complete data.

"49. The Architect will investigate all such proposals, consult with the owner where necessary, or desirable, and render final decisions as promptly as possible.

"50. The Architects do not bind themselves to consider substitutions after the expiration of one month, since the delays occasioned by the necessary investigations will tend to delay the ordering of materials, and hence the progress of the work.

"51. All matters, in this connection, shall be submitted to the Architects through the Superintendent."

The architects lived in Dallas, and it was shown, without controversy, that the procedure they adopted with reference to substitutions was to require contractors to submit samples of desired substitutes to the construction engineer (Yantis). This procedure was known to appellees at the time the contract was made. The specifications provided, in this regard: "The Superintendent represents the Architects and the Owner, and will be in constant supervision of the work under these contracts. After the contracts are awarded, contractors shall deal directly through him in handling all matters pertaining to the plans and specifications. It shall be his duty to pass on quality of materials and workmanship and to see that the plans and specifications are correctly followed in their true intent and meaning, in accordance with the interpretations of same by the Architects."

Appellees delivered to appellants samples of their products the day the contract was made, May 12, 1932. Appellants submitted them to Yantis on May 27, 1932, and substitution was declined by him on that day. Appellees contend that appellants failed in their obligation under the contract (1) in the delay of two weeks in submitting the samples; and (2) in the manner in which they were submitted. We assume the correctness of this contention. Hence, it will be unnecessary to detail the pertinent evidence.

While Yantis was on the stand as a witness for appellants, he produced a letter written to him in his capacity as superintendent of construction by the architects on May 6, 1932, reading:

"Dear Mr. Yantis:

"The Substitution Clause in our Supplementary General Conditions states: 'The Architects do not bind themselves to consider substitutions after the expiration of one month, since the delays occasioned by the necessary investigations tend to delay the ordering of materials and hence the progress of the work.'

"About three months have now elapsed since the awarding of the contracts and we feel that all contractors who have meritorious substitutions to offer have had full opportunity to make their applications. In the interest of the jobs, both from the standpoint of the materials or specialities specified and also from the standpoint of delays occasioned, we feel that the time has come to refuse consideration of substitutions.

"We therefore wish to advise you that this office will not consider applications for substitutions from this time on except in those cases where you or Mr. Gill may have made a definite commitment to some one that his application would be considered.

"This will not in any way interfere with changes which should be made, as covered under Article 15 of the General Conditions

of the Contract. No changes will be made however, without the approval of the Comptroller as has been agreed."

Appellees objected to this letter "as immaterial and irrelevant and an effort to vary the terms of the contract in which they agreed to obtain the approval of the architects." The court sustained this objection and in so doing made the following statement in open court: "As I construe this writing (referring to the above quoted stipulation in the contract in suit), this is an absolute promise and warranty on the part of the Defendants to get·approval of this material. The writing is plain and unambiguous, and it is no justification to the Defendants that they did not get approval or could not get approval. They contracted to get approval and it was up to them to get it." In line with this ruling, the court declined to permit Yantis to answer whether he was acting "in accordance with. instructions of the architects."

■ That the contract in suit was not an absolute understanding on appellants'·part to obtain the architects' approval of the substitution, but on the contrary was conditional upon their success in obtaining that approval, does not, we think, admit of substantial doubt. The contract was made with reference to appellants' contract with the university, and for the sole purpose of obtaining materials to be used in performing that contract. Appellants had no other use for the material. Both parties so understood. Insertion of the stipulation would have been meaningless, unless its purpose was to import a condition into the contract. If appellants were bound absolutely to obtain the architects' approval, then it necessarily follows that the writing constituted an absolute and unconditional contract of purchase and sale, and the stipulation was wholly supererogatory. We concur in the holding that "the writing is plain and unambiguous." Its import, however, is not that of "an absolute promise and warranty," but of a conditional promise to purchase.

■ If the stipulation were one of doubtful interpretation, that doubt would be resolved in favor of our above construction, under appellees' petition wherein the contract was declared upon as a "conditional order."

■ As we understand from appellees' brief, they do not now seriously contend that the contract was other than condi-·tional. Their objection to admission of the letter, ·however, construed in the light of the court's pronouncement in sustaining it. (which objection and pronouncement we have given above in hæc verba), is hardly susceptible of any other construction. As we understand appellees' present ·contention, the letter was not admissible because it was an ex parte statement of the architects, and because it was not made with reference to the contract in suit, as no request had been made of the architects to allow the substitution here involved.

We do not sustain either of these contentions. The letter was an authoritative ruling of the architects addressed to the official through whom, under the procedure they had prescribed, substitutions must be applied for by contractors. It was proved up as such. It stated in unequivocal terms that no further substitutions would be allowed, except where commitments had already been made. It was a direction to the superintendent to act in accordance with that ruling.

■■ It is elementary that where a contract is conditional upon the happening of an event beyond the control of the contracting parties, performance is excused absent the event's happening. Here, the happening of the event consisted in the action of a third·party, stranger to the contract, with the additional element of an obligation on one of the contracting parties (appellants) to make reasonable effort to induce the third party to action which would bring about the event's happening. Assuming a breach of this obligation, still the party obligated could excuse his performance by showing that the third party would not have acted favorably to the event's happening, even though his obligation had been fully performed.

In support of their position, appellants cite Park v. Swartz, 110 Tex. 564, 222 S. W. 156. The case there turned on the question of burden of proof. The plaintiff there sued upon an exclusive ·agency for the sale of property. Defendants wrongfully withdrew the agency, thereby preventing performance by plaintiff. The holding is thus stated by Mr. Chief Justice Phillips: "Upon establishing the contract, his readiness and willingness to perform it, and that he was denied opportunity to perform it through its wrongful breach by the defendants, rendering its performance by him impossible, the plaintiff made out his

case; and prima facie was entitled as damages to the amount which under the contract he would, presumably, have earned if his rights had been respected. If the plaintiff could not or would not have performed the contract, regardless of its breach by the defendants, it was incumbent upon them to make the proof. This, they failed to do."

Here defendants (appellants) were not permitted to show that the condition would not have happened, even though they had performed their obligation to make reasonable effort to bring about its happening.

Our holding upon this issue renders unnecessary a discussion of appellees' other contentions.

The trial court's judgment is reversed and the cause remanded.

Reversed and remanded.

On Appellee's Motion for Rehearing.

■■ The main contention of appellees' motion is that in appellants' original answer the fact that the architects would not have allowed the substitution in any event was not pleaded as a defense to the action.

It is conceded that this issue was fully pleaded in appellants' supplemental answer. As stated in our original opinion, appellees themselves pleaded this issue as constituting an element in their cause of action. The general denial put in issue all allegations of their petition. It may be seriously questioned, under the holding in Boswell v. Pannell, 107 Tex. 433, 180 S.W. 593, whether appellees, by their affirmative pleading of this issue, assumed the burden of proof as well as of allegation. We do not pass upon this issue. We merely hold, as in our original opinion, that the pleadings were sufficient to admit the evidence. It should be noted, also, that neither the objection to the evidence, nor the court's pronouncement in excluding it, intimated that the issue was not raised by the pleadings. All parties, including the trial judge, manifestly assumed that the issue was sufficiently raised. This was the theory upon which the case was tried below, and we see no valid ground for giving a construction to the pleadings, not then urged, but urged for the first time upon appeal.

The motion is overruled.

Overruled.