Howard W. EDMUNDS, d/b/a Parkway
First Ltd., Appellant,

v.

HOUSTON LIGHTING & POWER
COMPANY, Appellee.

No. 525.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Oct. 13, 1971.

Rehearing Denied Nov. 3, 1971.

T. Turner Pope, Kamp, Laswell & Howard, Houston, for appellant.

William R. Brown, Baker & Botts, Houston, for appellee.

BARRON, Justice.

This is a suit upon an alleged contract. Howard W. Edmunds, d/b/a Parkway First Ltd., filed suit against Houston Lighting & Power Company in the District Court of Harris County. Plaintiff alleged that about August 1, 1969, in his capacity as developer of property in the Houston and Harris County area, he received in the mails an offer to enter into a contract with Houston Lighting & Power Company. Plaintiff alleges that he accepted the alleged offer of defendant orally as well as by letter on or about November 5, 1969. This suit arises out of the refusal of the Lighting Company to install for the plain-

tiff free of charge an underground electric distribution system in a mobile home park or development.

On or about August 1, 1969, Forest Cove Development Company, by letter directed to the attention of Howard Edmunds, received a communication from Jack M. Newton, Manager, Residential Sales Department of Houston Lighting & Power Company, Houston, Texas, announcing defendant's program of underground residential electric service without charge "(u)nder the conditions set forth in the attached folder" * * *. The enclosed folder was a printed brochure announcing the program, subject to specified conditions and limitations. The brochure in its beginning reads as follows:

"Effective August 1, 1969, Houston Lighting & Power Company will offer to subdivision developers the following practices *applicable to single family dwellings and/or townhouses located on individual lots.*" (Emphasis added).

Howard W. Edmunds was interested in the Forest Cove Development Company, a conventional home developer, and defendant's brochure came to his attention. He thereafter sought to require the Lighting Company to install a free underground electric distribution system in a mobile home park or subdivision which he was developing known as "Parkway", which the Lighting Company refused to do unless the plaintiff would pay the difference in cost between the underground system and a standard overhead system.

Edmunds was a developer of Parkway First Ltd., which is a "residential" area where the lots are owned by individual property owners who develop the lots into "single family dwellings" by the use of mobile homes. It was shown that improvements in Parkway First Ltd. are of high quality, with concrete streets, curbs and gutters, storm sewers, central sewer and water, street lights, sidewalks, underground telephone, and natural gas service.

It is one of Lighting Company's positions that "mobile home subdivisions" and "single family residential subdivisions" are in different classes and that the "mobile home park" does not qualify under the free URD (underground residential distribution) system or the program as outlined in the above-mentioned brochure sent to appellant by appellee.

Edmunds, the developer, brought suit, and both parties filed motions for summary judgment. The trial court overruled the plaintiff's motion for summary judgment and sustained the motion of Houston Lighting & Power Company, entering judgment that plaintiff take nothing. The plaintiff, Edmunds, d/b/a Parkway First Ltd., has appealed and will be designated appellant here. Appellant contends that as a matter of law correspondence and oral acceptance between the parties resulted in a valid contract; that if such contract is not established as a matter of law, the intent of the parties governs, which is a question of fact for a jury; and that whether a mobile home under the circumstances of this case was included under the term "single family dwelling" is a question of fact and can not be determined upon a motion for summary judgment.

Appellant has based his suit upon a contention that the circular or brochure which appellee mailed to Forest Cove Development Company with its letter of August 1, 1969, constituted a valid offer, which Parkway First Ltd. could, and allegedly did, accept, thereby creating a contract between the parties. Appellant filed a motion for summary judgment asking the court to decree that there was a valid contract between the parties, which motion the trial court overruled and entered judgment favorable to appellee.

■ It is basic law that in order for there to be an offer which may ripen into a contract by a simple acceptance, the offer must be reasonably definite in its terms and must sufficiently cover the essentials

of the proposed transaction so that, with an expression of assent, there will be a completed and definite agreement on all essential details. Texas Employers' Ins. Ass'n v. Moore, 56 S.W.2d 652, 654 (Tex. Civ.App.—Waco 1932, writ ref'd); Morrow v. De Vitt, 160 S.W.2d 977, 983 (Tex. Civ.App.—Amarillo 1942, writ ref'd w. o. m.); 13 Tex.Jur.2d 131–132, Contracts, Sec. 15 (1960). And see Williston and Thompson, Selections from Williston on Contracts, (Rev.Ed.), Sec. 37, 42 (1964).

■ Consideration of appellee's circular or brochure, upon which appellant relies, demonstrates that it was nothing more than an invitation to negotiate, leaving many matters open which would of necessity have to be settled by a written agreement or contract. For instance, the brochure contained, among other similar provisions, the following:

(a) "At Company's option certain lots adjacent to overhead distribution facilities will be served from the overhead distribution." The parties would have to reach an agreement on those "certain lots" to be served from overhead lines.

(b) A portion of the brochure labeled A(b) (1) states: "Developer will provide required easements * * *. Developer must coordinate easement layout with Company prior to dedication of subdivision plat * * *." An easement is an interest in land and would require a grant in writing with definite descriptions. The brochure makes it clear that the appellant and the Company must agree upon the easement locations.

(c) In A(b) (2) of the brochure it is stated: "In any development where limited easement widths are available and/or paved areas are traversed with URD primary and/or secondary lines. Developer will be required to furnish and install conduit to Company's specifications."

(d) At Section C(a) it is provided: "Where rear lot lines are used for URD installations the easement space required on each side of the rear lot line * * * will be determined at the time the subdivision or section thereof plat is submitted to the Company for coordination of the URD layout."

(e) In a portion of the Lighting Company's brochure designated A(e) (3) it is stated: "In situations where rear lot lines are adjacent to uncommitted acreage or to rights of way * * * and where overhead distribution facilities do not exist and are not definitely planned, the lots may at Company's option be included in the standard URD arrangement."

(f) The brochure provides that "(t)he URD system will be supplied from a main overhead or primary line(s) constructed on poles." It is further noted that a portion of the brochure labeled B(a) contains this warning: "Note: The main supply of the subdivision or section thereof may be adjacent to or through the middle of the subdivision; * * *." An understanding on the location of the main supply line is a prerequisite to an agreement or contract.

■ The above examples are only a few of those contained in appellee's brochure. All are prerequisites to a meeting of the minds required for a binding contract. It is a necessary requirement that an offer in order to be valid and binding on acceptance must be sufficiently definite to enable a court reasonably to give it meaning, and if an offer contemplates an acceptance by merely an affirmative answer, the offer itself must contain all the terms necessary for the required definiteness. We have carefully considered the alleged offer in this case, and we believe the letter and brochure received by appellant on August 1, 1969, lack the reasonable certainty required to constitute an offer. On the con-

**800**

trary, we believe the above brochure amounted to nothing more than an invitation to enter into negotiations to contract for the underground electric distribution system. Corbin, Contracts, Sec. 28, p. 81 (1963). And see Daugherty v. Missouri-Kansas-Texas R. Co. of Texas, 221 S.W.2d 928 (Tex.Civ.App.—Austin 1949, no writ). And where written instrument or instruments are required as to essential portions of an alleged agreement, as in the case of necessary easements in the present case, the parties are not bound by contract until such instrument or instruments are executed. Greene v. Waggoner Refining Co., 278 S.W. 492, 494 (Tex.Civ.App.—Fort Worth 1925, no writ). And see American Law Institute, Restatement of the Law of Contracts, Sec. 25 (1932).

■ Appellant in his third point urges that if a contract was not entered into between the parties as a matter of law, then the intent of the parties governs, which is a question of fact for the jury, and summary judgment is improper. The appellee's answer is that appellant did not plead ambiguity. However, where facts appear in the summary judgment evidence which would justify an amendment of the pleadings, such amendment should not be prevented by the entry of final judgment, and summary judgment in such event should be denied regardless of defects which exist in the pleadings of the opposite party. Womack v. Allstate Insurance Company, 156 Tex. 467, 296 S.W.2d 233, 237 (1956); DeBord v. Muller, 446 S.W.2d 299, 301 (Tex.Sup.1969). However, we find no dispute in the competent evidence pertaining to appellant's vital point in this case, i. e., whether a contract ever came into existence. We hold, therefore, as a matter of law that appellee discharged its burden of proof in this case, and that no contract existed between the parties. The trial court, therefore, did not err in granting summary judgment in favor of appellee, Houston Lighting & Power Company. See Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.Sup.1970).

In view of the above, it is unnecessary that we decide whether a mobile home under these circumstances might be considered to be a "single family dwelling" as defined and intended by appellee's brochure in question.

The judgment of the trial court is affirmed.