Harry S. PHILLIPS, Appellant,

v.

INEXCO OIL COMPANY, INC.,
Appellee.

No. 954.

Court of Civil Appeals of Texas,
Tyler.

July 29, 1976.

Rehearing Denied Sept. 2, 1976.

Willis Jarrel, Goodwin & Jarrel, Tyler,
for appellant.

Edmund F. Benchoff, Benchoff & Guidry,
Nacogdoches, John L. McConn, Butler, Bin-
ion, Rice, Cook & Knapp, Dillon J. Fergu-
son, Houston, for appellee.

MOORE, Justice.

Appellant, Harry S. Phillips, plaintiff be-
low, brings this appeal from a summary
judgment rendered in favor of appellee-de-
fendant, Inexco Oil Company.

In 1970, Inexco, being interested in drilling an oil well on a tract known as the Douglas Prospect in Nacogdoches County, Texas, entered into a farmout agreement with Humble Oil & Refining Company whereby certain leases around the Douglas Prospect area were assigned to Inexco. Prior to drilling the well Inexco also entered into a written assignment agreement dated October 21, 1970, whereby appellant, Harry S. Phillips, assigned to Inexco 11 oil and gas leases in the area of the Douglas Prospect tract for a period of 15 months, for and in consideration of the sum of $50 per acre, together with an overriding royalty interest on the leases. The assignment of the leases was made subject to a letter agreement executed by Inexco and Phillips at the time of the assignment of the leases. Omitting its formal parts and other parts not material to this appeal, the letter agreement written by Inexco and addressed to Phillips reads as follows:

"By assignment dated 21 October, 1970, you have transferred and assigned to this Company (Inexco) 11 mineral leases in the above captioned area. In addition, Inexco owns the 44 mineral leases more particularly described in Exhibit 'A' hereto. The leases described in said assignment and the leases in Exhibit 'A' hereto are collectively referred to as 'Inexco Leases.'

"In connection with the Inexco Leases, you and Inexco have agreed as follows:

1.

"Pursuant to the provisions of a Farmout Agreement between Inexco and Humble Oil and Refining Company, Inexco is soon to drill a well in the Douglass area in Nacogdoches County. If said well is plugged and abandoned as a dry hole, Inexco agrees that, prior to its dropping any of the Inexco Leases, you shall have the right and option to purchase all, or any one or more, of them for a consideration of $50.00 per net mineral acre. If said well is plugged and abandoned, Inexco shall give you written notice at least 30 days prior to dropping any of Inexco's Leases; you shall then have a period of 30 days from receipt of such notice within which to exercise your option to purchase all, or any one or more, of the leases described in such notice. If you do not exercise your option and consummate the purchase within such 30 day period, your right and option shall terminate and you shall thereafter have no claim of any kind upon any of the Inexco Leases described in said notice.

2.

"In the assignment mentioned above to Inexco, you have reserved certain overriding royalties. As to the Inexco Leases described in Exhibit 'A' hereto, which you may acquire pursuant to your option, Inexco shall retain overriding royalties identical to those which you have retained in your assignment to Inexco.

3.

"Upon proper exercise of your option pursuant to the foregoing provisions hereof, Inexco shall tender to you an assignment; * * *

* * * * * *

"If the above correctly sets forth the agreement and understanding reached between you and Inexco, please so signify by execution of two copies hereof in the space provided and returning said executed copies to Inexco, whereupon this shall be a valid and binding contract and agreement."

Prior to the execution of the foregoing letter agreement, the parties, after some discussion, agreed to add the following as a part of their agreement, causing the same to be typed immediately below their respective signatures:

"Subject, however, to the following: Should Harry S. Phillips desire to drill a well in the area prior to either Inexco's notification to Phillips of its intent to drop any of Inexco leases or prior to the expiration of the 15-month assignment from Phillips to Inexco, Phillips may notify Inexco of his intent and be entitled to reassignment within 30 days of notice of all of Inexco's leases or any part thereof. He shall pay $50 per net mineral acre for any or a part of the 44 mineral leases

described in Exhibit 'A' and the 11 mineral leases conveyed by assignment from Phillips to Inexco. No override is to be retained by Inexco as to the 11 mineral leases transferred to Inexco by Phillips. It is further agreed that Inexco will have the option in lieu of reassignment as provided hereinabove to advise Phillips that Inexco will do one of the following: (1) Drill a 100% test well, or (2) drill a joint well with Phillips on terms mutually agreed upon."

The assignment, whereby Phillips assigned his 11 mineral leases to Inexco, was made subject to the letter agreement. Under the terms of the assignment, Phillips had the right to reacquire the 11 leases he sold to Inexco upon the expiration of 15 months, provided they were not by that time included in a producing unit. Specifically the assignment provided: "Upon expiration of fifteen (15) months from the date hereof, this assignment, and all rights and interests transferred and assigned hereby, shall lapse and terminate as to each lease described in Exhibit 'A' hereto, which is not productive. In this context a 'productive' lease is either one upon which a commercially producing well, or a well capable of producing commercially is located, or a lease which is included within a productive pool or unit formed by Assignee."

It is without dispute that Inexco drilled the well and brought in a gas well and that the well has continued to produce gas in paying quantities. Shortly after the well was brought in, Phillips, by letter dated May 31, 1971, notified Inexco of his intent to drill a well and requested the assignment and re-assignment of fifteen of the leases comprising approximately 640 acres, offering to pay the $50.00 per acre stipulated in the agreement, and offering to drill a well thereon to a specified depth. Not having heard from Inexco within 30 days, Phillips made written demand on Inexco for the assignment and reassignment of the fifteen leases.

When Inexco refused to reassign any of the leases, Phillips instituted the present suit against Inexco alleging that under the "subject however" clause of the contract he was entitled to a reassignment of his 11 leases, together with the 44 leases owned by Inexco, except those which had become subject to unitization agreements by reason of the production of oil or gas thereon. Appellant sought specific performance of the letter agreement, and alternatively for title to the leases, and for an accounting for oil and gas produced therefrom, or in the alternative for damages for breach of contract. Inexco answered with a general denial and affirmatively alleged that no duty rested on it to assign or reassign the leases because the well contemplated by the agreement had not been "plugged and abandoned as a dry hole" but was completed as a producing well and, therefore, since the contract was predicated upon a contingency which never occurred, Phillips had no right to the leases. Both parties moved for a summary judgment contending they were entitled to a judgment as a matter of law under the terms of the above quoted letter agreement. After a hearing, the trial court denied Phillips' motion, but granted the motion of defendant, Inexco, and rendered a take nothing judgment against Phillips, from which he perfected this appeal.

We affirm.

In his first supplemental petition appellant alleged that "the agreement of October 21, 1970, consisting of the assignment and the letter with the special contract provisions that were added after the original letter and assignment had been prepared, are not ambiguous and same is not susceptible to more than one interpretation." Thus, appellant elected to stand on the contract as it was written.

■ In the absence of allegations raising an issue of ambiguity, the agreement will be enforced as written. *Ayers v. Hodges*, 517 S.W.2d 589 (Tex.Civ.App.-Tyler 1974, no writ); *Sale v. Contran Corporation*, 486 S.W.2d 161 (Tex.Civ.App.-Dallas 1972, writ ref'd n.r.e.). The primary concern of the courts is to ascertain and give effect to the true intention of the parties. To

achieve this object the courts will examine and consider the entire writing, seeking as best they can to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154 (1951); *Citizens National Bank in Abilene v. Texas & Pacific Ry. Co.*, 136 Tex. 333, 150 S.W.2d 1003 (1941). Bearing in mind the foregoing rules of interpretation, we will now examine the agreement as written by the parties.

■ Under the provisions of paragraph 1 of the letter agreement, it is clear that the parties intend that Phillips was to have an option to repurchase the leases upon the happening of two conditions, to-wit: (1) on the condition that the well to be drilled by Inexco was "plugged and abandoned as a dry hole" and (2) upon Inexco determining to drop the leases. The parties agree that such an interpretation is to be accorded in Paragraph 1. The controversy arises as to the proper interpretation to be accorded the "subject to" clause which the parties added to the letter agreement. Appellant takes the position that the latter clause is a "special provision" and confers on him a right to the assignment and reassignment of the leases under the circumstances delineated therein irrespective of whether the well was "plugged and abandoned as a dry hole." In other words, appellant takes the position that paragraph 1 and the "subject to" paragraph are divisible parts of the agreement with the latter paragraph defining the rights of appellant without regard to the success or failure of the initial well. Inexco, on the other hand, takes the position that any right Phillips might have to assignment or reassignment of the leases was conditioned on the well being plugged and abandoned as a dry hole as provided in paragraph 1 and since such contingency never occurred, the summary judgment in its favor must be sustained. We agree with this contention.

In *Portland Gasoline Co. v. Superior Marketing Co.*, 150 Tex. 533, 243 S.W.2d 823, 824 (1951), the court said:

"Agreements must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, if that intention can be ascertained from their language. In the transactions of business life, sanity of end and aim is at least a presumption, though a rebuttable one. A reasonable interpretation will be preferred to one which is unreasonable."

Upon considering the letter agreement from its four corners, it is apparent to us that what the parties intended to do was to define their respective rights and obligations in the event the prospective well was plugged and abandoned as a dry hole and Inexco decided to drop the leases. There is nothing in the agreement defining the obligations or rights of the parties in the event the well produced oil or gas although both parties, being experts in the field of oil and gas production, knew of such possibility. The reason why they failed to define their right and obligations in the event of production was no doubt due to the fact that both parties knew that Inexco owned the leases and would continue to own them so long as the leases produced oil or gas in commercial quantities and as a result appellant would have no right to re-acquire them.

Contrary to appellant's contention, we do not believe the "subject to" clause had the effect of conferring on Phillips a right to re-acquire the leases even though the well was brought in as a producer.

While the term "subject to," as used in instruments of conveyance, has a well recognized meaning, as used here it is merely an agreement to contract on terms different from that which Inexco originally offered. Originally Inexco offered, in the event the well was plugged and abandoned as a dry hole and the leases were to be dropped, that it would notify Phillips thirty days before dropping the leases and he was to be given a thirty-day option to re-acquire all 55 leases. Under the "subject to" clause, in the event the well was abandoned as a dry hole and Phillips desired to drill a well on the leases, he was not required to wait

until Inexco notified him that it intended to drop the leases or until the 15 month assignment expired but instead could speed up his reacquisition of the leases as well as the acquisition of Inexco's leases by giving the notice provided for therein. Further, the parties agreed that upon Inexco's receipt of such notice from Phillips, Inexco had the option to drill another "test" well either alone or jointly with Phillips or to assign all the leases to Phillips. Apparently, the purpose of the "subject to" clause was to prevent Inexco, after abandonment of the original well, from keeping Phillips' leases in effect for the 15 month assignment period without further development by Inexco.

The fact that the "subject to" clause refers to the drilling of another well as being a "test" well is at least some indication that they intended the "subject to" clause to become operative only in the event the first well proved to be nonproductive. Moreover, the fact that the "subject to" clause provided that no notification on the part of Inexco would be necessary is significant. This provision could only have reference to the thirty day notice Inexco was required to give Phillips prior to dropping the leases in the event the well was abandoned as a dry hole. As we view the agreement the parties did not intend the "subject to" clause to become operative unless the contingencies stipulated in paragraph 1 occurred.

Appellant's interpretation of the "subject to" clause as being operative despite the conditions precedent provided for in paragraph 1 is simply not reasonable. According to appellant's interpretation, he would have the right to reacquire not only his leases but also those owned by Inexco within minutes after the execution of the agreement, unless Inexco exercised its option to drill another well. Moreover such an interpretation would require Inexco not only to transfer the very lease on which the producing well was situated for the sum of $50 per acre, but would also require Inexco to transfer all other leases in a proven area for $50 per acre. In addition to this, appellant

would be in a position to demand that Inexco continue to drill wells, unless Inexco exercised its option to transfer the Inexco leases to appellant. Such result would be unreasonable and not in accordance with the intent of the parties.

The agreement of the parties was specifically conditioned on the abandonment of the well as a dry hole and on Inexco's determination to drop the leases.

█ Where a promise is conditional, the condition precedent must be fulfilled before such promise can be enforced. Where a contract is conditioned on a specified event, the happening thereof is essential to the duty to perform. 17A C.J.S. Contracts § 456a and c; *Harris v. Wheeler,* 267 S.W. 465 (Tex.Com.App.1924, holding approved); *Courreges v. System Freight Service, Inc.,* 152 S.W.2d 841, 844 (Tex.Civ.App.-El Paso 1941, no writ); *Young & Pratt v. Southwest Insulation & Packing Co.,* 94 S.W.2d 276 (Tex.Civ.App.-Austin 1936, writ dism'd). Since the event or contingency contemplated by the parties never occurred, it follows that Inexco was under no obligation to transfer the leases to appellant.

By his final point of error appellant contends that the trial court erred in rendering a summary judgment because the letter agreement was ambiguous, thus creating a fact question as to the intent of the parties. The point is overruled.

█ It is well settled that upon appeal a case will not be reviewed on a theory different from that on which it was tried in the court below. *American Mutual Liability Ins. Co. v. Parker,* 144 Tex. 453, 191 S.W.2d 844 (1945); *Askey v. Power,* 36 S.W.2d 446 (Tex.Com.App.1931, holding approved); *Ayers v. Hodges,* 517 S.W.2d 589, 592, (Tex.Civ.App.-Tyler 1974, no writ). Appellant alleged in his pleading in the trial court that the letter agreement was not ambiguous and was not susceptible to more than one interpretation. In these circumstances appellant is not in a position to urge that a fact issue was raised because of an ambiguity in the agreement.

The judgment of the trial court is affirmed.

DUNAGAN, Chief Justice (dissenting).

I respectfully dissent.

In my opinion the letter of agreement which is the basis of this lawsuit is ambiguous and can be resolved only by reference to inconclusive extrinsic evidence. I agree with the majority that where the pleadings do not raise the issue of ambiguity the agreement will be enforced as written. "However, where facts appear in the summary judgment evidence which would justify an amendment of the pleadings, such amendment should not be prevented by entry of final judgment, and summary judgment in such event should be denied regardless of defects which exist in the pleadings of the opposite party." *Edmunds v. Houston Lighting & Power Co.,* 472 S.W.2d 797, 800 (Tex.Civ.App.-Houston [14th Dist.] 1971, writ ref'd n. r. e.), and the cases cited therein. It has also been held that, "[i]n the event of ambiguity in an instrument which can be resolved only by reference to inconclusive extrinsic evidence, or if there is doubt as to the true meaning of an instrument, if ambiguous, the granting of a summary judgment is improper." *Martin v. First State Bank,* Memphis, 490 S.W.2d 208, 213 (Tex.Civ.App.-Amarillo 1973, n. w. h.), and cases therein cited. *See Massey v. Aztec Life Ins. Co.,* 532 S.W.2d 702, 706 (Tex. Civ.App.-Ft. Worth 1976, n. w. h.).

I would reverse and remand this case to the trial court for a determination of intent of the parties.