# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00496-CV

**Daniel J. McAtee, Laura Spoor, William and Sandy Fivecoat, Jeffrey S. Perry, William and Anita Mennucci, Tal Tversky, Amanda and William Dreux LaViolette, Joey Tsai, Aaron Wine, and Michael and Felicia Adams, Appellants**

**v.**

**City of Austin, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT NO. D-1-GN-10-000234, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants Daniel J. McAtee, Laura Spoor, William and Sandy Fivecoat, Jeffrey S. Perry, William and Anita Mennucci, Tal Tversky, Amanda and William Dreux LaViolette, Joey Tsai, Aaron Wine, and Michael and Felicia Adams brought this breach of contract action against the City of Austin, as the owner and operator of the electric utility, Austin Energy. Appellants alleged that the City was contractually liable to them for damages based on Austin Energy's failure to approve their applications to participate in a solar energy rebate program.[1]

---

[1] In its briefing to this Court, the City states that this Court has jurisdiction over appellants' claims because the City's "operation and maintenance of a public utility" is a proprietary function "for which [it] enjoys no sovereign immunity." *See* Tex. Civ. Prac. & Rem. Code § 101.0215(b)(1) (defining "operation and maintenance of a public utility" as a proprietary function); *see also City of Georgetown v. Lower Colo. River Auth.*, ___ S.W.3d ___, 2013 Tex. App. LEXIS 10665, at *28–29 (Tex. App.—Austin Aug. 23, 2013, no pet. h.) (holding that city did not have governmental immunity from claims arising from proprietary functions).

Appellants challenge the trial court's summary judgment in favor of the City, its denial of their motion for partial summary judgment, and its evidentiary ruling sustaining the City's objections to some of appellants' summary judgment evidence. For the reasons that follow, we affirm the trial court's final judgment.

## BACKGROUND

The dispute between the parties concerns Austin Energy's photovoltaic (solar) energy rebate program as it existed on September 23, 2009, and subsequent modification of that program. On September 23, 2009, Austin Energy provided details and guidelines for the program on its website, including the steps for an Austin Energy customer to qualify for a rebate. On its website, Austin Energy instructed interested homeowner customers to complete a "Solar Energy Rebate Participation Form," and stated that an Austin Energy representative would be in contact after Austin Energy received the form to "schedule a preliminary survey of your property to determine eligibility." To qualify for the rebate, a homeowner also had to submit a "rebate application." On "rebate approval," Austin Energy would issue a letter of intent and, after receiving a letter of intent, the homeowner had 120 days to install the energy system. Austin Energy, however, modified this program as of September 24, 2009. Austin Energy returned pending rebate applications for which a letter of intent had not been issued as of that date and notified homeowners with pending applications of the program modifications. Among the revisions to the program, the amount of the available rebate was reduced.

Appellants filed this breach of contract suit in January 2010. They asserted that: (i) they were homeowners who met the requirements for Austin Energy's rebate program as it existed

2

on September 23, 2009; (ii) they submitted their rebate applications on or before that date; (iii) when they submitted their applications, they accepted Austin Energy's rebate offer creating a binding contract; and (iv) Austin Energy breached the contract when it returned their applications to them, refusing to perform the pre-inspection, issue the letter of intent, and pay the rebate. Appellants sought damages in the amounts of the rebates that they would have received under the program as it existed on September 23, 2009. Appellants did not resubmit applications under the revised rebate program or install the systems on which the rebates would have been calculated.

The City answered and, several months later, appellants moved for partial summary judgment. *See* Tex. R. Civ. P. 166a(c). In their motion, they contended that the City's "communication to the public of its requirements for participation in the solar rebate program constituted a valid offer to enter into a contract," that they accepted the offer by submitting rebate applications, and that the City had refused to perform and breached their contracts. They also set forth the amount of rebate that each appellant would have received under the program as it existed on September 23, 2009. The motion referred to and relied on evidence of a 2004 Austin City Council resolution concerning the rebate program and affidavits from appellants with attachments. This evidence, however, was not included in the appellate record.

The City filed a response to appellants' motion and a competing motion for summary judgment. In its motion for summary judgment, the City urged that the pleadings demonstrated the absence of a contract as a matter of law. *See id.* The City also sought summary judgment on the grounds that appellants failed to satisfy conditions precedent required by the purported contract and failed to take reasonable steps to mitigate damages. The City further sought no-evidence summary

3

judgment on the grounds that appellants had no evidence of execution of the purported contract, compliance with the statute of frauds, *see* Tex. Bus. & Com. Code § 26.01, or the existence of an offer to contract. *See* Tex. R. Civ. P. 166a(i).

In its motion for summary judgment, the City referred to and relied on the parties' pleadings, appellants' affidavits, and appellants' response with attachments to the City's first request for production of documents. The attachments include copies of pages from Austin Energy's website as they existed on September 24, 2009, appellants' rebate applications with attachments, an Austin Energy memorandum dated September 29, 2009, outlining modifications to the program, and a letter from Austin Energy to appellant Amanda LaViolette explaining the modifications.[2]

Appellants responded to the City's motion with evidence of pages from Austin Energy's website as they existed in 2010 and a 2010 Austin City Council resolution pertaining to the rebate program. The City objected to this evidence on relevance and materiality grounds. After a

---

[2] The Austin Energy memorandum states:

> The solar rebate program for FY2010 is suspended effective September 24, 2009 and no new residential rebate applications will be accepted until November 1, 2009, when new program guidelines will be applicable. Pending applications without a signed Letter of Intent from Austin Energy will be returned to applicants. Residential applicants may resubmit under the new guidelines on or after November 1, 2009.

It then provides details of the modifications and states that Austin Energy will accept applications "in the event that additional rebate funds become available, under the continuing express condition that simply submitting an application does not entitle a customer to a rebate."

The letter to appellant LaViolette enclosed her application and a copy of the rebate program revisions and notified her that the program had been changed because of "unprecedented demand and limited budget" and that she could "re-apply under the new guidelines on or after November 1, 2009."

4

hearing on the competing motions for summary judgment, the trial court sustained the City's objections to appellants' additional evidence and granted summary judgment in favor of the City on all grounds asserted in its motion except the issue of mitigation of damages. This appeal followed.

## ANALYSIS

Appellants raise four issues on appeal. They contend that a contract was created by their actions in submitting their completed forms to Austin Energy for participation in the rebate program, that the trial court erred in granting summary judgment for the City, that the trial court erred in denying their motion for partial summary judgment on their contract claim, and that the trial court erred in sustaining the City's objections to their summary judgment evidence.

### Summary Judgment

Appellants' first three issues challenge the trial court's summary judgment ruling. We review a trial court's summary judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary judgment, the movant must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A movant seeking a no-evidence summary judgment must assert that "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex. R. Civ. P. 166a(i). "The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact" on the challenged element. *Id*.; *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex. 2006). When reviewing a no-evidence summary judgment, we "review the evidence

5

presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Mack Trucks*, 206 S.W.3d at 582 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) and *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)). If the trial court does not specify the grounds for its summary judgment, we must affirm the summary judgment "if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

Because the trial court granted the City's motion on all grounds raised by the City except the issue of mitigation of damages, we must affirm the summary judgment if any of the other grounds raised by the City was meritorious. *See id.* One of the other grounds asserted in the City's motion was that there was no evidence of a valid contract because there was no evidence of an offer to contract. *See Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 465 (Tex. App.—Dallas 2006, pet. denied) (elements of valid contract include offer); *Hubbard v. Shankle*, 138 S.W.3d 474, 481 (Tex. App.—Fort Worth 2004, pet. denied) (same); *see also Roof Sys., Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 442 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (elements of a breach of contract action include existence of "valid contract"). To defeat the City's no-evidence motion, then, it was appellants' burden to produce summary judgment evidence that raised a genuine issue of material fact on the challenged element of offer. *See* Tex. R. Civ. P. 166a(i).

Appellants argue that the trial court erred in granting summary judgment in favor of the City as to the element of offer because the evidence showed that the City made an offer as a matter of law or, alternatively, the evidence raised a genuine issue of material fact as to Austin Energy's intent to make an offer. They argue that the evidence showed that Austin Energy presented a public offer to pay a rebate to its customers on its website and that they accepted the offer when they submitted applications to participate in the rebate program. The City counters that the information on the website was no more than an advertisement or solicitation for Austin Energy's rebate program and that, although the website intended to invite Austin Energy customers to apply for the rebate program, a reasonable person would understand that submitting an application did not guarantee participation in the program.

"To prove that an offer was made, a party must show (1) the offeror intended to make an offer, (2) the terms of the offer were clear and definite, and (3) the offeror communicated the essential terms of the offer to the offeree." *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied) (citation omitted); *see also* Restatement (Second) of Contracts § 24 & cmt. a (1981) ("An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to the bargain is invited and will conclude it. . . . [T]he key concept involves giving the addressee the apparent power to conclude a contract without further action by the other party.").

An "invitation to enter into negotiations," however, is not an "offer." *Baldwin v. New*, 736 S.W.2d 148, 152 (Tex. App.—Dallas 1987, writ denied); *Edmunds v. Houston Lighting & Power Co.*, 472 S.W.2d 797, 799–800 (Tex. Civ. App.—Houston [14th Dist.] 1971, writ ref'd

7

n.r.e.) (brochure mailed to plaintiff "nothing more than invitation to enter into negotiations to contract"); *Morrow v. DeVitt*, 160 S.W.2d 977, 983 (Tex. Civ. App.—Amarillo 1942, writ ref'd w.o.m.) (proposal may be "merely a suggestion to induce offers by others"); *see also Brown v. Haywood*, No. 07-02-0424-CV, 2004 Tex. App. LEXIS 3249, at \*10–11 (Tex. App.—Amarillo Apr. 8, 2004, pet. denied) (mem. op.) ("Frequently negotiations for a contract are begun between parties by general expressions of willingness to enter into a bargain upon stated terms and yet the natural construction of the words and conduct of the parties is rather that they are inviting offers, or suggesting the terms of a possible future bargain, than making positive offers."); Restatement (Second) of Contracts § 26 (1981) ("A manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent.").

We determine whether Austin Energy intended to make an offer on its website as of September 23, 2009, based on the language of the website itself, construing it as a matter of law unless the language is ambiguous. *See Enterprise Leasing Co. v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004) ("If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law." (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)); *Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26 (Tex. App.—Amarillo 2000, no pet.); *see also Brown*, 2004 Tex. App. LEXIS 3249, at \*7 (explaining that whether offer was made "garnered from the entire language of the document itself, unless the language is ambiguous"). We also assign to the words on the website their "plain, ordinary, and generally accepted meaning[s]." *See Exxon Corp.*,

8

22 S.W.3d at 26; *Brown*, 2004 Tex. App. LEXIS 3249, at *7; *see, e.g.*, *Dorsett*, 164 S.W.3d at 662

(undefined contract terms generally are given "plain, ordinary, and generally accepted meanings").

As of September 23, 2009, the "solar rebate program" page on the website set forth

the amount of rebate available and generally described the program as follows:

> Austin Energy offers rebates to help customers implement solar photovoltaic technology in their homes and businesses. The rebates help offset the cost of a solar photovoltaic electric system. Note: As a municipally-owned utility, Austin Energy may only offer this program to its customers.
>
> . . . .
>
> Thank you for your interest in our Power Saver Program. Please note that you can apply for both a loan and a rebate.

This page expressly instructed a homeowner that an application was required to participate in the

rebate program and provided a "link" to "apply."

Another "link" on this page was to the "Details" page. That page instructed a

homeowner interested in the program to "[c]omplete the Solar Energy Rebate Participation Form"

and then set forth additional steps to qualify for a rebate, including the following:

> Once we've received your form, an Austin Energy representative will contact you. The representative will schedule a preliminary survey of your property to determine rebate eligibility.
>
> . . . .
>
> To qualify for the solar rebate program, Austin Energy must approve your solar energy system prior to installation. . . . Submit your rebate application (pdf) . . . . Wait for rebate approval—we will send you a Letter of Intent (LOI), which guarantees your rebate request for 120 days.

9

. . . .

> Thank you for your interest in our Power Saver Program. Please note that you can apply for both a loan and a rebate.

This page informed an interested homeowner that Austin Energy "must approve" the homeowner's system prior to installation, that the homeowner must "submit [a] rebate application," and that Austin Energy must issue a letter of intent to "guarantee[]" a rebate request for 120 days. Austin Energy also provided on the website that "[r]ebate funding is offered on a first-come, first-served basis" and that Austin Energy "guidelines and rebate levels are subject to change at any time, without notice."

We conclude that this language is not ambiguous, and we construe it as a matter of law. *See Barrios*, 156 S.W.3d at 549. Giving the words their plain and ordinary meaning, Austin Energy expressly set forth that an interested homeowner was required to "apply" for a rebate under the program, Austin Energy had to approve an applicant's system and issue a letter of intent before a homeowner qualified for a rebate, Austin Energy did not guarantee a rebate until a letter of intent was issued, and rebate funding was subject to change and budgetary constraints. The plain meaning of this language is that Austin Energy did not intend and did not make an offer that a homeowner could accept by submitting a rebate application to create a binding contract. *See Domingo*, 257 S.W.3d at 39; *Exxon Corp.*, 22 S.W.3d at 26; *Baldwin*, 736 S.W.2d at 152; *see also* Restatement (Second) of Contracts § 24 & cmt. a. We, therefore, conclude that the evidence of Austin Energy's website does not raise a genuine issue of material fact of the challenged element of offer. *See* Tex. R. Civ. P. 166a(i).

10

To the extent that appellants rely on their affidavits to raise a fact issue to preclude summary judgment on the challenged element of offer, the affidavits are not in the clerk's record for our review.[3] In their briefing to this Court, appellants cite a supplemental clerk's record for the location of the affidavits, but the appellate record does not include a supplemental clerk's record. It is an appellant's burden to bring forward a sufficient record to demonstrate error. *Barrios*, 156 S.W.3d at 549. Absent a complete record of the trial court proceedings, an appellate court must presume that the omitted documents support the trial court's judgment. *Id.* at 550. Therefore, we presume that the affidavits do not raise a material fact issue on the element of offer that would preclude summary judgment in favor of the City. *See id.*

We conclude that appellants failed to raise a genuine issue of material fact on the element of offer and, therefore, that the trial court did not err in granting the no-evidence summary judgment in favor of the City on this ground. *See* Tex. R. Civ. P. 166a(i). We need not address the City's alternative grounds for summary judgment or appellants' competing motion for partial summary judgment. *See Knott*, 128 S.W.3d at 223 (explaining that it was not necessary to address alternative theories raised in summary judgment motion when "any of the theories presented to the trial court and preserved for appellate review are meritorious"). We overrule appellants' first, second, and third issues.

---

[3] Appellants also have attached a copy of appellant Daniel McAtee's affidavit to their brief along with a copy of the 2004 Austin City Council resolution. The attachments, however, are not properly before us. *See Quorum Int'l v. Tarrant Appraisal Dist.*, 114 S.W.3d 568, 572 (Tex. App.—Fort Worth 2003, pet. denied) (appellate court "bound to determine . . . case on the record as filed").

**Evidentiary Ruling**

In their fourth issue, appellants contend that the trial court abused its discretion by sustaining the City's objection to their summary judgment evidence of Austin Energy's website as it existed in 2010 and the 2010 Austin City Council resolution pertaining to the rebate program. The City objected to the evidence on relevance and materiality grounds. *See* Tex R. Evid. 401.[4]

We review a trial court's evidentiary decisions under an abuse of discretion standard. *National Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527–28 (Tex. 2000). A trial court abuses its discretion when it acts unreasonably or in an arbitrary manner or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Further, "[u]nless the trial court's erroneous evidentiary ruling probably caused the rendition of an improper judgment, we will not reverse the ruling." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000) (citation omitted); *see* Tex. R. App. P. 44.1.

Appellants relied on pages from Austin Energy's website in 2010 to support their contention that Austin Energy intended the previous website to constitute a binding offer. The 2010 website pages include language expressly conditioning any obligation under the program on funding being available and stating that "Austin Energy makes no financial commitment to rebate applicants until a signed Letter of Intent is issued." Appellants argue that the revised website is some evidence that the prior website without the highlighted language was an offer and that "[s]ubsequent language changes are relevant to interpretation of intent."

---

[4] Rule 401 of the Texas Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tex. R. Evid. 401.

The trial court, however, reasonably could have concluded that the pages from Austin Energy's website in 2010 were not relevant. *See* Tex. R. Evid. 401. Because the issue before the trial court was whether Austin Energy made an offer on its website on September 23, 2009, the language on the website on that date was the dispositive version of the website. The trial court then would have been within its discretion to conclude that the evidence of the 2010 website pages was not relevant. Moreover, given our conclusion that the plain meaning of the words on the Austin Energy website as of September 23, 2009, was not an offer that a homeowner could accept to create a binding contract, we conclude that appellants have failed to show that the trial court's ruling probably caused the rendition of an improper judgment. *See Auld*, 34 S.W.3d at 906.

As to the 2010 Austin City Council resolution, appellants relied on it to support their contention that the statute of frauds did not apply. Even if we were to conclude that the trial court abused its discretion by sustaining the City's objection to this evidence, we have affirmed the summary judgment in favor of the City on a different ground. We conclude then that appellants have failed to show that the trial court's exclusion of this evidence probably caused the rendition of an improper judgment. *See id.* We overrule appellants' fourth issue.

## CONCLUSION

For these reasons, we affirm the final judgment.

13

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed: October 10, 2013