Floyd McGRATH, Appellant,

v.

BANK OF THE WEST and Matthew J. Schaper, Appellees.

No. 01–89–00434–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 18, 1990.

Rehearing Denied March 15, 1990.

Gerson D. Bloom, Galveston, for appellant.

Stephen W. Baker, Barker & Lain, P.C., Galveston, for appellees.

Before WARREN, DUGGAN and MIRABAL, JJ.

## OPINION

WARREN, Justice.

The trial court granted Bank of the West ("the Bank") summary judgment against

Floyd McGrath ("McGrath"), allowing the bank to offset the amount due under a note made by Albert Armstrong ("Armstrong") in favor of the Bank, against a certificate of deposit pledged by McGrath to secure payment of the note.

McGrath argues on appeal that the trial court improperly granted the summary judgment because: (1) the Bank was required, under Tex.R.Civ.P. 31, to join the maker of the note and attempt collection before it resorted to the pledge; and (2) McGrath did not sign the note, therefore, a fact question existed as to whether he was liable on it.

In early 1988, Armstrong sought a loan from the Bank. As an accommodation to Armstrong, and as a condition to the loan being made, McGrath pledged a $10,000 certificate of deposit to secure payment of a $3500 loan to Armstrong. McGrath did not sign the note, but he did sign a form entitled "Owner's Consent to Pledge," as follows:

*Owners Consent to Pledge*

Galveston, Texas

To: Bank of the West
P.O. Box 3399
Galveston, Texas 77552

Gentlemen:

FOR VALUE RECEIVED, and for the purpose of enabling Albert Armstrong (hereinafter called "Debtor") to obtain credit or other financial accommodations from you, the undersigned hereby authorizes Debtor to hypothecate, pledge and deliver to you the property of the undersigned described below (hereinafter called the "Collateral"). The undersigned agrees that when so hypothecated, pledged and delivered the Collateral shall be collateral to secure all liabilities of Debtor to you, howsoever created, whether now existing or hereafter arising, whether direct or indirect, whether absolute or contingent and whether due or to become due (such liabilities being hereinafter called the "Indebtedness"), hereby consenting to the extension or renewal from time to time of any Indebtedness.

The undersigned agrees that the Collateral shall be subject to disposition in accordance with the terms and conditions of Debtor's note or notes and Security Agreements to you.

No renewal or extension of the time of payment of the Indebtedness, no release or surrender of any security for the Indebtedness, no release of any person primarily or secondarily liable on the Indebtedness (including any maker, endorser or guarantor), no delay in enforcement of payment of the Indebtedness and no delay or omission in exercising any right or power with respect to the Indebtedness or this Owner's Consent to Pledge *shall in any manner impair or affect your* rights hereunder. The undersigned waives notice of the creation, existence and renewal of Indebtedness.

Bank of the West Certificate of Deposit # 4124

(Floyd McGrath)

/s/ Floyd McGrath

Armstrong signed the note and security agreement, which contained this language:

**Default and Remedies**—I will be in default on this agreement if any event specified in the "Default" paragraph of the note occurs. If I am in default on this agreement or on any secured obligation, you have all of the remedies provided in the note or other obligation and all of the remedies provided below and by law. You may:

.    .    .    .    .

(c) take immediate possession of the property, but in doing so you may not breach the peace or unlawfully enter onto my premises. You may then sell, lease or dispose of the property, as provided by law. You may apply the proceeds of the disposition to your expenses (including amounts actually expended for repossessing, storing, preparing for sale and selling the property) and then to payment of the secured obligations. Except when prohibited by law, you may obtain a deficiency judgment if the proceeds do not satisfy the debt. If any items not otherwise subject to this agree-

ment are contained in the property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them.

Armstrong defaulted on the note, and the Bank offset the amount of principal and accrued interest due on the note with McGrath's certificate of deposit. McGrath then sued the Bank for the amount offset, alleging that the pledge had been made without his consent or knowledge. The Bank counterclaimed, seeking a declaratory judgment that it had the right to offset the amount due on Armstrong's note against the certificate of deposit pledged by McGrath.

■ On February 14, 1988, the Bank filed a motion for summary judgment, which the court set for hearing on March 10th. On March 7th, three days before the summary judgment hearing, McGrath filed his response to the Bank's motion for summary judgment. He sought no leave to file this untimely response, nor does the record show that he ever sought the court's permission to file the response. There is no indication in the record that the court considered the tardy response. Under these circumstances, we must presume that the court refused to hear the late filed instrument. *INA of Texas v. Bryant,* 686 S.W.2d 614, 615 (Tex.1985).

Because McGrath filed no timely response to the motion for summary judgment, we must determine whether the Bank's motion and affidavits, considered with all other competent summary judgment evidence, show that the Bank was entitled to judgment as a matter of law. The summary judgment evidence consisted of the note and security agreement signed by Armstrong, the Owner's Consent to Pledge signed by McGrath, and the affidavits of Stephen Baker and Matthew Schaper. Schaper's affidavit recited that the Bank was the holder of Armstrong's note, that it was in default, and that the Bank wished to exercise its right to offset the amount due under the note against McGrath's certificate of deposit. Baker's affidavit pertained to the reasonableness of

attorney's fees, which, incidentally, were not allowed.

The Owner's Consent to Pledge states that Bank of the West certificate of deposit # 4124 was pledged to the Bank to secure all liabilities of Armstrong to the Bank. It then recites that McGrath agrees that the collateral shall be subject to disposition in accordance with the terms and condition of the debtor's note and security agreement. Under the "Default and Remedies," section (c) of the security agreement, the Bank is entitled to take immediate possession of the property, sell, lease, or dispose of the property as provided by law, and apply the proceeds to the expenses and payment of the obligation.

■ We find that this transaction is governed by Chapter 9 of the Texas Uniform Commercial Code, dealing with secured transactions. Tex.Bus. & Com.Code Ann. §§ 9.101–9.507 (Tex.UCC) (Vernon 1968 & Supp.1989). The above language of the security agreement tracks, in part, the provisions of § 9.503, governing the secured party's right to take possession after default, and § 9.504, governing the secured party's right to dispose of collateral after default.

A certificate of deposit is an instrument in which a security interest can be perfected under the Texas Business and Commerce Code. *First Nat'l Bank v. Lone Star Life Ins. Co.,* 524 S.W.2d 525, 528 (Tex.Civ.App.—Dallas), *writ ref'd n.r.e. per curiam,* 529 S.W.2d 67 (Tex.1975).

The Owner's Consent to Pledge, read together with the security agreement, created a security interest in the certificate of deposit which was enforceable by the Bank. Section 9.203 provides the following requirements for attachment of a security interest:

[A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless:

(1) the collateral is in the possession of the secured party pursuant to agreement ...

(2) value has been given; and

(3) the debtor has rights in the collateral.

Tex.Bus. & Com.Code Ann. § 9.203(a) (Tex. UCC) (Vernon Supp.1989). Here, we find that the collateral was in the possession of the Bank, and that the Bank had given value for the security interest.

Turning to the third requisite for attachment, we find that the "debtor" referred to in subsection (3) of § 9.203 refers to the owner of the collateral, McGrath, rather than to Armstrong, the obligor on the note. "Debtor" is defined in § 9.105 to mean:

> [T]he person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, and includes the seller of accounts or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral in any provision of the chapter dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires.

Tex.Bus. & Com.Code Ann. § 9.105(a)(4) (Tex.UCC) (Vernon Supp.1989). Because § 9.203 is a provision dealing with collateral, the term "debtor" means the owner of the collateral, or McGrath. Therefore, because McGrath had rights in the certificate of deposit, all three requirements for attachment of the security interest were met.

We have concluded, under the summary judgment evidence in the record before us, that, as a matter of law, the Bank acquired and perfected a valid and enforceable security interest in the certificate of deposit as security for Armstrong's debt. *Montavon v. Alamo Nat'l Bank*, 554 S.W.2d 787 (Tex.Civ.App.—San Antonio 1977, no writ). As such, the Bank was not required, under Tex.R.Civ.P. 31, to join Armstrong and attempt collection prior to exercising its rights in the collateral. Further, we do not find that any fact question as to McGrath's liability was raised in the summary judgment proof before us.

We overrule both points of error.

The judgment is affirmed.